*In re* ZICK'S ESTATE.

1. DEPOSITIONS—IRREGULARITIES—WAIVER—LOST WILL.
In proceedings to establish and probate a lost will, any irregularities in the taking of the deposition of an aged and infirm witness (3 Comp. Laws 1915, § 12494), who it was claimed had drawn the will, were waived, where attorneys for contestants were present and made no objection when said deposition was received in evidence upon the trial in the probate court.

2. SAME—ADMISSIBILITY—PREJUDICE.
Where no claim was made that the rights of contestants were in any wise prejudiced by irregularities in the taking of the deposition, it was properly received in evidence.

3. EVIDENCE—HEARSAY—RES GESTÆ.
Testimony as to what was said and done by testatrix and her lawyer in the presence of witness when the will was being prepared was admissible as part of the *res gestæ*, and was not objectionable on the ground of hearsay.

Error to Wayne; Cross, J., presiding. Submitted January 22, 1919. (Docket No. 93.) Decided May 29, 1919.

Proceedings by Mary Schloemp to establish and probate a lost will alleged to have been made by Wilhelmina Zick. The will was disallowed in the probate court, and proponent appealed to the circuit court. Judgment for proponent. Contestants bring error. Affirmed.

*Condon, Nellis & Condon (George M. Lehman,* of counsel), for appellants.

*William Look* and *Duncan C. Beath (Keena, Lightner, Oxtoby & Hanley,* of counsel), for appellee.

BIRD, C. J. This is a proceeding to establish and probate a lost will alleged to have been made by Wil-

helmina Zick, of the city of Detroit. The proffered will was denied allowance in the probate court. On appeal to the circuit court the jury found in favor of the will and the contestants raise two questions in this court which they argue should reverse the judgment of the trial court.

1. Application to the probate court to have the lost will allowed was made on December 9, 1915, and by reason of foreign heirs being interested the hearing was postponed to February 16, 1916. On December 15th, Mary Schloemp, the proponent and sole legatee under the lost will, filed a petition in probate court, in which she set up the fact that the lost will was drawn by Mr. Meyer B. Breitenbach, an elderly attorney, of Detroit, who was then past the age of 86, and that he was in poor health, and by reason thereof prayed that his testimony might be taken before the probate court in accordance with section 10136, 3 Comp. Laws 1897 (3 Comp. Laws 1915, § 12494). This petition was filed and indorsed by or under the direction of the probate court, as follows:

"Petition of Mary Schloemp, legatee of deceased, praying for order to take testimony of Meyer B. Breitenbach, subscribing witness to will.
"Filed December 15, 1915.
    "CHARLES C. CHADWICK, Probate Clerk.
"Take testimony December 22, 11 a. m."

Agreeable to this petition and order, notice was served upon the attorneys for the resident heirs that the testimony of Meyer B. Breitenbach would be taken before the Honorable Edward Command, judge of probate, on December 21, 1915, at his court room, in the city of Detroit.

The testimony appears to have been taken on December 21st instead of the 22d, presumably by agreement, as the attorneys for the foreign heirs and some of the resident heirs were present at the examination

on that date. The witness, Meyer B. Breitenbach, was present, sworn and first examined by Judge Command. Afterwards he was examined and cross-examined by counsel for the respective parties. The testimony was taken by the court stenographer and transcribed by him. Subsequently, at the hearing, the testimony was read by the court stenographer, without objection by any of the contesting parties. The will was disallowed and an appeal was taken to the circuit court. When the deposition was offered in evidence in the circuit court it was objected to for the following reasons:

"*Mr. Kane:* I hereby admit that if the stenographer who took the shorthand minutes of the testimony given by Meyer Breitenbach, on December 21, 1915, were here in court with his notes, that he would testify that the paper marked Exhibit 8 is a correct and true transcript of the stenographic notes of that evidence, subject, however, to the following express objections: *First,* That said testimony was not taken in such a way as provided for by the statutes of the State of Michigan. *Second,* Said stenographer's minutes are incompetent, irrelevant and improper to be received as evidence on this hearing. *Third,* That section 10136 of the Third Compiled Laws of 1897 does not authorize or provide for the taking or perpetuating of testimony in the way that the testimony of Meyer Breitenbach was taken; that the record shows that no notice of the taking of said Meyer Breitenbach's evidence on December 21, 1915, was served on Charles Ahnert, Emma Pellerin and Mrs. Elizabeth Kramer, three of the parties to this matter; and that they were not represented or present at the taking of said testimony; that no order was ever made by the probate court for the county of Wayne, upon the petition of Maria Schloemp, granting said petition to take the testimony of Meyer Breitenbach for the purpose of perpetuating it, or fixing any time for the taking of said testimony; that said testimony was not taken on the hearing of the pending contest over the admission to probate of the alleged lost will of Wilhelmina

Zick, but was solely taken for the purpose of perpetuating the testimony of Mr. Meyer Breitenbach; that said testimony of Meyer Breitenbach, by the record, never to have been transcribed under the direction of Judge Command, who took same; that it never has been signed by Meyer Breitenbach, never has been certified to be correct by the official before whom it was taken; that none of the requirements of section 10139 of the Third Compiled Laws of Michigan for the year 1897 have been complied with."

It will be unnecessary, we think, to consider these objections in detail. The cardinal purpose of giving notice of the taking of a deposition is to enable the adverse parties to be present and cross-examine the witness. The notice which was served in this case appears to have been effective in bringing counsel for the contesting heirs to the examination. They took part in the proceeding and one of them cross-examined Mr. Breitenbach and the others had opportunity to do likewise. Afterwards, at the hearing of the petition in probate court, the testimony of Mr. Breitenbach was read by the court stenographer who took it, without objection from any one, notwithstanding all of the attorneys in the case were present except Judge Hanley, who was not then connected with the case. No one of them made any objection or entered any protest against the admission of the deposition. As the deposition was read objections were made to specific questions and answers and they were ruled upon by the court in the same way as though the witness were present and testifying. At that time Mr. Breitenbach was living, but was slightly indisposed. Afterwards when the trial was had in the circuit court he was dead. Under these circumstances it would be manifestly unjust to hold the testimony incompetent because the formalities prescribed for taking depositions had not been strictly observed, and especially is this so since no claim is made by the contestants that their

rights were in any wise prejudiced by the irregularities complained of. The trial court was quite right in holding that contestants had waived their right to complain of them. See *Matson* v. *Melchor*, 42 Mich. 477; *Edwards* v. *Heuer*, 46 Mich. 95; *In re Alexander*, 136 Mich. 518.

2. Lizzie Poggansee, an old friend and neighbor of testatrix, testified that she was with testatrix at Breitenbach's office when the will was made; that testatrix came to her house and requested witness to accompany her. In the following testimony she relates what was done and said in her presence:

"*Q.* What did she tell him? Tell in your own way just what she told him and what she wanted done. * * *

"*A.* She told him she wanted to have a will made, in my presence.

"*Q.* What kind of a will?

"*A.* She said she wanted all her property to go—

"*Mr. Kane:* Same objection.

"*Q.* Tell us.

"*A.* —all the property and cash money to go to Maria Schloemp, a stepdaughter, after her death.

"*Q.* And after she told Breitenbach that in your presence, what did Mr. Breitenbach do?

"*A.* He done as she told him.

"*Q.* Wrote a will?

"*A.* Yes, sir. After she told Mr. Breitenbach that in my presence, Mr. Breitenbach wrote a will. After he wrote it, he read it to us.

"*Q.* What did the will provide?

"*A.* She wanted everything to go to her stepdaughter, Maria Schloemp—the property and cash money. After he read this paper to her, Mrs. Zick signed her name to it, when me and Mr. Breitenbach were present. After she signed her name, I signed mine in Mrs. Zick's presence, and Mr. Breitenbach's presence. Mr. Breitenbach also signed in my presence and Mrs. Zick's presence. We were in just one room on this occasion. All I have related took place in that one room.

"*Q.* What did Mrs. Zick say in your presence before this paper was signed?

"*A.* I don't know that she said anything much. She said the paper was her last will. I signed my name because Mr. Breitenbach asked me to.

"*Q.* All this conversation and these acts were performed in her presence?

"*A.* Yes, sir. The only statement she made to Mr. Breitenbach before the paper was signed, that I can remember, is that she wanted to have her will made. After the paper was signed he put it in a large envelope and wrote something on it—I don't know what, and handed it to Mrs. Zick, who took it along with her, and we went together in the street car. We were in Mr. Breitenbach's office, I should judge, about an hour."

It is argued that this testimony is hearsay and should have been stricken out upon contestants' motion. We cannot agree with counsel that the testimony was objectionable for the reason stated. The witness did not undertake to testify to the contents of the will. She made no attempt to restate what testatrix told her concerning its contents, she simply related what was done and said by testatrix and her lawyer when the paper was being prepared. Her testimony had reference to the *res gestæ* and was competent and material.

Finding no error in the record, the judgment must be affirmed.

OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.