## WHITE v. DIRKS.

1. DEPOSITIONS — JUDICIAL PROCESS — PRIOR INCONSISTENT STATE-MENTS.

   Prior inconsistent statements in a deposition differ from other prior inconsistent statements in that a deposition is "an arm of the judicial process" (GCR 1963, 302.4).

2. SAME—ADMISSIBILITY—NOTICE—IMPEACHMENT.

   Use of a deposition for purpose of impeaching a witness *held*, improper, where deposition was taken without notice to a party against whom the deposition was being used (GCR 1963, 302.4, 306.1).

3. SAME — EFFECT — IMPEACHMENT — PRIOR INCONSISTENT STATE-MENTS.

   Use of deposition to impeach witness' testimony on basis of a prior inconsistent statement, in automobile accident case where a cross-claim is being tried along with the complaint *held*, to affect the principal case as well as the cross-claim (GCR 1963, 302.4, 306.1).

4. SAME—SERVICE OF NOTICE.

   Reversible error prejudicial to defendant westbound motorist B was committed by permitting use of deposition of eastbound motorist D, a fourth motorist involved in multiple-car accident, against B, where B had not been served with notice that deposition was to be taken in action by eastbound A against westbound B and C (GCR 1963, 302.4, 306.1).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4] 23 Am Jur 2d, Depositions and Discovery § 104; **58 Am Jur**, Witnesses § 774.
[2] 23 Am Jur 2d, Depositions and Discovery § 34 *et seq.*
[5] 53 Am Jur, Trial § 55 *et seq.*
[6] 5 Am Jur 2d, Appeal and Error § 1011 *et seq.*

5. APPEAL AND ERROR—REMAND—SEPARATE TRIALS—CROSS-CLAIM—
   DEPOSITIONS.
   Judgment for A, eastbound motorist, against B and C, west-
   bound motorists, is ordered reversed and separate new trials
   are ordered on remand on A's claim against B and C, and on
   B's cross-claim against C, where permitting the joint judg-
   ment for A against B and C to remain could operate to prevent
   determination of cross-claim by invocation of doctrine of *res
   judicata*, reversible error prejudicial to B having been com-
   mitted through C's use of a deposition by D, an eastbound
   motorist also involved in the accident, without having given
   B notice of the taking of the deposition (GCR 1963, 302.4,
   306.1).

6. COSTS—REMAND—CROSS-CLAIM—NEW TRIAL—SEPARATE TRIALS.
   Costs are ordered to abide results of separate new trials on
   complaint and cross-claim where error prejudicial to the de-
   fendant cross-complainant had been committed at first trial
   by use of deposition without the cross-complainant having been
   given notice that deposition was to be taken (GCR 1963,
   302.4, 306.1).

Appeal by leave granted from the Court of
Appeals, Division 3; Burns, P. J., and T. G. Kava-
nagh and Fitzgerald, JJ., affirming in part and
reversing in part Kalamazoo, Fox (Raymond W.),
J. Submitted November 7, 1967. (Calendar No.
27, Docket No. 51,677.) Decided January 8, 1968.

5 Mich App 437, reversed.

Complaint by Theodosia White, for herself and
as administratrix of estate of Francis A. White,
deceased, against Chester H. Dirks, Edward K.
Cornhill, and William H. Wesler for wrongful
death of Francis A. White resulting from an auto-
mobile collision allegedly caused by negligence of
defendants. Cross-claim by Edward J. Cornhill
against Chester H. Dirks and William H. Wesler
for personal injuries sustained in the same collision.
Defendant Wesler was granted a directed verdict

on the complaint and he was voluntarily dismissed as to the cross-claim. Judgment for plaintiff on the complaint and judgment of no cause of action on the cross-claim. Court of Appeals affirmed judgment for plaintiff and reversed and remanded as to cross-claim. Defendants Cornhill and Dirks appeal. Judgment for plaintiff reversed and cause remanded for separate trials on complaint and cross-claim.

*Dalm & Dalm,* for plaintiff.

*Howard & Howard,* for defendant Dirks.

*Troff, Lilly, Bonow, Piatt & File,* for defendant Cornhill.

KELLY, J. A four-car chain collision resulted in the death of Francis A. White.

Plaintiff, for herself and as administratrix, commenced this suit in the Kalamazoo county circuit court against three of the drivers involved in the collision, namely: Edward K. Cornhill, Chester H. Dirks, and William Wesler.

Cornhill answered the complaint and simultaneously filed a cross-claim against Dirks and Wesler.

Defendant Wesler was granted a directed verdict at the close of plaintiff's case, and was voluntarily dismissed by cross-plaintiff Cornhill following opening statements.

The jury returned a joint verdict in the sum of $12,000 against defendants Cornhill and Dirks and a verdict of no cause of action on Cornhill's cross-claim against Dirks.

Defendant Cornhill appealed both judgments. The Court of Appeals affirmed the White judgment but reversed the judgment of no cause of action

against Cornhill and remanded that case for a new trial.

This Court granted leave to appeal to both defendants Cornhill and Dirks.

The accident occurred at or about 4 p.m., August 10, 1963, on Highway M–43 west of the Kalamazoo city limits. M–43, at the scene of the accident, is a four-lane, clearly marked, divided highway, with a median consisting of a concrete strip approximately four feet wide and two inches higher than the traveled portion of the roadway, dividing traffic driving west from traffic driving east.

The lane marking and median strip extend west of the scene of the accident to the overpass of US–131, which is a north-south highway, and the median extends east of the accident scene to the intersection of Drake road and M–43. East of Drake road the highway is four-lane but undivided.

On the south side of M–43 is the Elks Country Club with a parking lot which has an entrance leading onto M–43. Opposite this entrance is a break in the median strip of the highway which allows the passage of traffic turning left off the westbound lanes of the highway into the parking lot. It was at this point that the collision took place.

Appellant Cornhill, a Kalamazoo businessman, testified that he left Kalamazoo in his Cadillac car to drive to the Elks Temple and join his wife who was attending a wedding reception; that he had never before been to the Elks Temple; that he was driving in the right (north) lane as he passed the shopping center just east of Drake road; that he entered the inner (south) lane half a block west of Drake road, which would be approximately 2–1/2 to 3 blocks before the scene of the accident; that his turn signal light was on, indicating he was going to turn, at least a block before he made the turn

into the inner lane; that as he had never been before
to the Elks Country Club he approached slowly
looking for the place to go through the median; that
he brought his car to a stop 1–1/2 feet north of the
south line of the median; that several eastbound
cars passed him after he brought his car to a stop,
with his indicator and stop lights on; that he didn't
see Dirks before Dirks hit him because "my car
was turned, and when I looked in the mirror I
would be looking out into the field sort of north-
east."

Chester Dirks testified that he was a farmer
living in Rich Hill, Missouri; that his wife, two
children, and his sister and her girl friend accom-
panied him as they left Rich Hill to drive to Ithaca,
Michigan, to visit relatives; that he was on his way
from Kalamazoo to Grand Rapids and at Drake
Road he turned from the outer lane to the inner
lane; that Cornhill passed him and then turned into
the same lane he was driving in; that "he started
to leave me just a little at first and then the next
thing I noticed, he come to a sudden stop"; that
there were only a couple of blink signals on the
back of Cornhill's car as he stopped; that he tried
to avoid hitting him and turned to the right but
as Cornhill was only 15 feet in front of him as he
stopped, there was not room to avoid him and the
left front of his car crashed into Cornhill's car.

William Wesler testified that he followed the
Rathbun car (the car in which deceased was rid-
ing) for about 5 or 10 miles as they both drove
eastward toward Kalamazoo; that when he was
about 1/4 of a mile away from where the collision
later occurred he first saw Cornhill "just sitting
there waiting to turn"; that about 20 cars driving
east passed as Cornhill sat there; that he did not
see the Dirks car hit the back of the Cornhill car,
but saw Cornhill's car collide with the Rathbun

car; that he could see "about the whole right side" of the Cornhill car as he drove the last quarter of a mile after seeing Cornhill.

Mabel Rathbun, daughter of Francis A. White, deceased, testified that her father had been bothered with heart trouble and was in the habit of continuously feeling his pulse; that on the day of the accident as she drove east toward Kalamazoo he was in the back seat of the Chevrolet car she was driving; that she could not give any evidence to the jury as to what happened; that she "saw nothing," "heard nothing," and that she didn't remember even any fact connected with the accident; that she could not even recall whether her car was struck by one or more automobiles.

In addition to the testimony of the four drivers of the cars, above set forth, two additional witnesses testified as to what they observed just previous to the crash.

Gail Fern Buchanan Smith testified that she lived on Hulett road, Okemos, Michigan, near Lansing; that she saw the accident; that as she was driving west on M–43 in the south lane the traffic slowed down because of people making left turns and Cornhill passed her driving west in the north lane; that she did not see Cornhill again "until he was turning in the median"; that he edged into the median, and that the front end of his car was in the process of going into that median and stopping when he couldn't go any further; that there were two cars between Cornhill's car and her car and that she was, perhaps 100 to 150 yards behind both cars that were following Cornhill when she first saw the Cadillac's fins "and then he turned in, I saw more of the car"; that she saw 3 or 4 blinks of the directional signal; that the Cadillac was in the break in the median when it was hit; that the Ford (Dirks) struck the right rear fin on the Cadillac,

pushing it into the oncoming traffic, and the Cadillac
was hit again and pushed into the westbound lane
and kept going into the ditch—the north ditch of
the westbound lane; that the car following the Dirks'
car, being the car in front of her, swerved to the
right onto the shoulder and passed the collision
and did not stop; that "during the time of all this
impact, I had been—I noticed the turn signal on
the Cadillac—and I was in the process of going
into the northernmost part of the westbound lane
in order to avoid having to stop. There were no
cars immediately behind me. And it was during
this process of my going into this northern part
of the lane that the impact occurred, and so I just
kept going on over and I was slowing down, brak-
ing, and I was able to stop my car east of the
Cadillac after it had stopped in the ditch."

Chester Dirks' wife testified that she was busy
with her son who was changing his position in the
front seat of the car just prior to the collision;
that she saw a car coming to a sudden stop and
"I hollered out and I said, 'Oh, pull over,' and that's
all I remember from then on."

Appellant Cornhill claims the evidence discloses
that he was not guilty of violating any statutes;
was not guilty of negligence; that he did not come
to a sudden stop, and requests we find that the trial
court erred in refusing to grant his motion for
directed verdict on the trial and his motion for
judgment notwithstanding the verdict or for new
trial.

Considering the evidence in the light most favor-
able to the party against whom it is directed, we
conclude the trial court did not err in denying
appellant Cornhill's motions.

Witness Wesler's deposition was taken by the
attorney for Dirks without giving notice to Corn-

hill. Cornhill objected when Dirks proceeded to use this deposition for impeachment purposes.

It was obvious that a determination of the question as to the right to use the deposition was important in determining issues because, if the jury believed and accepted Wesler's testimony that numerous eastbound cars passed Cornhill's automobile as it stood motionless in the break in the median opposite the Elks Country Club, such acceptance would sustain and justify a verdict in favor of Cornhill in both the principal case and Cornhill's cross-claim against Dirks.

The court overruled Cornhill's objection and Dirks was allowed to ask Wesler the following question:

"Q. (By Mr. Howard): Now, on the 20th of November, 1964, in the presence of your lawyer and in my presence and the presence of Mr. Dalm, weren't you asked this question and didn't you give this answer: Question: 'But from your own observation you didn't see the Cornhill car either move forward into collision with the Rathbun car or see the Rathbun car hit the Cornhill car when the Cornhill car was standing still, you have no observation either way on that?' Answer: 'No; it just happened too fast to see.' Wasn't that question asked of you and that answer made by you in the presence of those gentlemen?

"A. Yes."

The trial court in ruling on appellant's motion for a new trial justified his ruling that the deposition of Wesler could be used for impeachment purposes by stating that the deposition was not offered in evidence, that it was not "used" within the meaning of the rule, and concluded by saying:

"The court permitted the questioning of Wesler 'as to any prior inconsistent statement' which it

was claimed Wesler may have made, whether the same was made as a part of a deposition or in any other manner. The court finds no error in this ruling."

The Court of Appeals explained its disagreement with the trial court's statement in regard to the use of the deposition by stating (5 Mich App 437, 444):

"We cannot agree that the deposition at hand was not 'used' within the purview of the court rule, nor can we agree that it equates with any prior inconsistent statement. The deposition is an arm of the judicial process, unlike an ordinary statement secured from a witness. Our court rules are replete with methods of enforcement of the depositional process, for the subpoena power (GCR 1963, 305.1) and for contempt orders and other remedies (GCR 1963, 313)."

The court rules applicable provide:

"Unless otherwise provided for by stipulation in writing or on the record, the party desiring to take the deposition of any person upon oral examination in accordance with subrule 302.1 shall give reasonable notice in writing to every other party to the action." GCR 1963, 306.1.

"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any 1 of the following provisions:

"(1) Any deposition may be used by any party for the purpose of impeaching the testimony of deponent as a witness." GCR 1963, 302.4.

We agree with the Court of Appeals. Neither the deposition, nor any part of the deposition, can be

used against any party for the purpose of impeaching the deponent when the deposition has been taken without notice to the party. Prior inconsistent statements in a deposition differ from other prior inconsistent statements in that depositions are "an arm of the judicial process."

Appellants Cornhill and Dirks challenge the Court of Appeals' decision, claiming that to hold that the error was confined to the cross-claim and had no "substantial effect" in the principal case was erroneous, impractical, and contrary to the record.

We agree with that conclusion. Wesler's testimony was as important to appellant Cornhill's defense to the principal case as it was to appellant Cornhill's cross-claim against Dirks.

Appellant Cornhill claims that a retrial limited solely to the cross-claim with the joint judgment of appellee White remaining against both appellant Cornhill and appellant Dirks could be prevented by invoking the doctrine of *res judicata*. We agree with appellant Cornhill's contention.

We reverse the Court of Appeals' holding that the verdict as to appellee White be affirmed and remand for a new trial in both the principal case of White *v.* Dirks and Cornhill and the cross-claim of Cornhill *v.* Dirks, and order that on retrial the case of White *v.* Cornhill and Dirks be separately tried from the case of Cornhill *v.* Dirks. Costs to abide the results of new trials.

DETHMERS, C. J., and BLACK, T. M. KAVANAGH, SOURIS, O'HARA, ADAMS, and BRENNAN, JJ., concurred.