GOODMAN v BAY CASTINGS DIVISION OF GULF & WESTERN
INDUSTRIES

1. Workmen's Compensation—Evidence—Depositions—Notice—Appeal and Error—Preserving Question.

It is well settled that a deposition may not be used against a party who was not notified of its taking, however, defects, irregularities, or omissions in a deposition, its introduction, or its taking, are waived by failure to object at the proper time and in the proper manner; thus, where a deposition was introduced at a workmen's compensation hearing at which a party defendant's counsel was present in the room and had an opportunity to object, failure then to object to its admission precludes the party from challenging its admissibility on appeal.

2. Workmen's Compensation—Statutes—Apportionment—Proof—Sufficiency—Prior Employment—Contribution to Disease.

The statute governing apportionment of liability for workmen's compensation benefits among several employers does not require proof that a disease was actually contracted while working for a prior employer; a showing that prior employment contributed to the disease is sufficient to hold a prior employer liable under the statute (MCLA 418.435).

3. Workmen's Compensation—Finding of Fact—Appeal and Error—Evidence—Sufficiency.

The findings of the Workmen's Compensation Appeal Board must be affirmed on appeal if there is any evidence in the record to support the findings; a determination by the board that employ-

References for Points in Headnotes
[1] 23 Am Jur 2d, Depositions and Discovery §§ 34–38.
　58 Am Jur, Workmen's Compensation § 531.
[2, 7] 58 Am Jur, Workmen's Compensation § 340 *et seq.*
　Workmen's compensation: termination of employment before occurrence of disability or disease attributable to employment as affecting right to compensation. 104 ALR 1210.
[3, 6] 58 Am Jur, Workmen's Compensation § 530.
[4, 5] 58 Am Jur, Workmen's Compensation § 252.
[8] 58 Am Jur, Workmen's Compensation §§ 454, 483.

ment in which an employee was exposed to paint fumes contributed to the pulmonary emphysema later contracted by the employee was supported by sufficient evidence where there was depositional testimony of a doctor to the effect that exposure to paint fumes can aggravate, accelerate, or cause pulmonary emphysema.

4. Workmen's Compensation—Liability—Silicosis and Dust Disease Fund—Burden of Proof.

The burden of proving the liability of the Silicosis and Dust Disease Fund to an employer in a workmen's compensation case in which the fund voluntarily appears is upon the employer; the employee need only show a permanent disability due to an occupational disease.

5. Workmen's Compensation—Hearings—Silicosis and Dust Disease Fund—Disability—Issues—Consolidation.

A hearing referee in a workmen's compensation case in which the Silicosis and Dust Disease Fund made a voluntary appearance had jurisdiction of the subject matter of the employer's claim against the fund and it was proper for him to dispose of both the issue of the occupational disease and the future potential liability of the fund in a single hearing; the objection that the determination of the fund's liability at such an early stage may be pointless because none in fact may ever exist is outweighed by the convenience, administrative efficiency, and economy of consolidating these issues.

6. Workmen's Compensation—Appeal and Error—De Novo Review —Scope of Review.

The Workmen's Compensation Appeal Board hears appeals from the hearing referee *de novo* and parties to such an appeal are charged with knowledge of that fact; where parties to such an action did not seek to limit the scope of the board's inquiry to the question or finding that the claimant had an occupational disease but filed general claims for review, they knowingly opened up the entire matter for review including an issue decided by the hearing referee determining the future potential liability of the Silicosis and Dust Disease Fund for reimbursement.

7. Workmen's Compensation—Contribution—Prior Employers— Reimbursement—Silicosis and Dust Disease Fund—Statutes.

Compensation contributions of a prior employer in a workmen's compensation case should cease when the Silicosis and Dust Disease Fund commences reimbursing the last employer where

the hearing referee apportioned the contributions between the two employers and found that, while the employee did not have a dust disease with respect to the prior employer, he did have a dust disease with respect to the last employer, thereby making the contributions of the last employer subject to reimbursement under the statutes governing reimbursement by the Silicosis and Dust Disease Fund; however, contributions for medical and hospital expenses made by the prior employer under such circumstances should continue (MCLA 418.531, 418.541).

8. WORKMEN'S COMPENSATION—HEARING—FINDINGS OF FACT—SILICO-SIS AND DUST DISEASE FUND—JOINDER.

The findings of a hearing referee in a workmen's compensation case to which the Silicosis and Dust Disease Fund was a party without objection are binding upon the fund with respect to its future liability; the Court of Appeals encourages the joinder of the Silicosis and Dust Disease Fund at the first hearing in a workmen's compensation claim so that witnesses concerning the claimant's illness can be heard at one time and that time is more proximate to the contraction of the disease.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 3 October 10, 1972, at Grand Rapids. (Docket No. 13506.) Decided September 26, 1973.

Application by Vinnia A. Goodman for hearing and adjustment of a workmen's compensation claim against Bay Castings Division of Gulf and Western Industries, Color Crafters, Inc., and Consolidated Underwriters Insurance Company. The Silicosis and Dust Disease Fund voluntarily entered an appearance. Benefits granted. Defendants Color Crafters, Inc. and Consolidated Underwriters Insurance Company appeal. Affirmed in part, reversed in part, and remanded.

*Miller, Johnson, Snell & Cummiskey* (by *Peter A. Patterson),* for defendant Bay Castings Division of Gulf and Western Industries.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, and *Ronald J. Styka*
and *A. C. Stoddard,* Assistants Attorney General,
for defendant Silicosis and Dust Disease Fund.

*Cholette, Perkins & Buchanan* (by *Sherman H.
Cone),* for defendants Color Crafters, Inc. and Consolidated Underwriters Insurance Co.

Before: HOLBROOK, P. J., and R. B. BURNS and
TARGONSKI,* JJ.

TARGONSKI, J. The plaintiff, Vinnia Goodman,
moved to Michigan in 1959, after doing industrial
work in other states from 1941 to 1959. After
moving to Michigan, she worked steadily, though
at four different places of employment, until November 8, 1968. As of that date, she was disabled
due to pulmonary emphysema, chronic bronchitis,
probable bronchiectasis, probable byssinosis, and
kyphosis of the dorsal spine.

The plaintiff then brought an action under the
Workmen's Compensation Act against her prior
Michigan employers for the past ten years. The
Silicosis and Dust Disease Fund voluntarily entered an appearance.

A hearing was held on February 17, 1970, and
the hearing referee dismissed the case against all
the plaintiff's prior employers except for Bay Castings and Color Crafters. The referee found that the
plaintiff was suffering from a "dust disease" and
ordered that Bay Castings pay compensation to the
plaintiff. The referee further ordered Color Crafters to reimburse Bay Castings to the extent of
49.25% of the amount that the latter had to pay to
the plaintiff.

The decision was appealed to the Workmen's

* Former circuit judge, sitting on the Court of Appeals by assignment
pursuant to Const 1963, art 6, § 23 as amended in 1968.

Compensation Appeal Board. The board ordered the referee's determination of the liability of the dust disease fund stricken from the record but affirmed the rest of the referee's decision.

From this affirmance Color Crafters brings this appeal and Bay Castings appeals that portion of the board's decision that finds plaintiff does not have a "dust disease" within the provisions of Part VIII, Section 4, Workmen's Compensation Act.[1]

## I

The first claim of error raised by the appellants is that the deposition of Dr. Ira Avrin was improperly admitted since they were never notified of its taking.

This claim would seem to be well taken since it is well settled that a deposition may not be used against a party who was not notified of its taking. GCR 1963, 302.4; *White v Dirks,* 380 Mich 1; 155 NW2d 165 (1968).

However, a review of the record reveals that the following colloquy took place prior to the admission of the deposition and while counsel for the appellants was present:

"*Mr. Libner:* At this time I would offer the deposition of Dr. Ira Avrin taken on December the 10th, 1969, in Southfield, Michigan.

"*The Referee:* Are there any objections other than as therein contained?

"*Mr. Hale:* No.

"*The Referee:* Go ahead, Mr. Libner."

Mr. Hale, who stated he had no objections, was representing Bay Castings but Color Crafter's

---

[1] Formerly MCLA 417.4; MSA 17.223: Now MCLA 418.415; MSA 17.237(415), MCLA 418.411; MSA 17.237(411).

counsel was in the courtroom and had an opportunity to object to its introduction.

The necessity for objecting to the admission of a deposition is stated in 9 Michigan Law & Practice, Depositions, § 23, p 383, as follows:

"In general, defects, irregularities, or omissions in a deposition, its introduction, or its taking, are waived by failure to object at the proper time and in the proper manner."

See also *In re Zick's Estate,* 205 Mich 681; 172 NW 382 (1919); 3 Callaghan's Michigan Pleading & Practice (2d ed), § 35.85, at 306.

In the instant case, the appellant had an opportunity to object and the failure to do so precludes it from challenging its admissibility in this Court. The board is affirmed on admissibility of Dr. Avrin's deposition.

## II.

The appellant next contends that the hearing referee erred in ordering apportionment because the exposure with the last employer was of a separate and distinct nature from such exposure with prior employers.

The governing statute is MCLA 418.435; MSA 17.237(435) which states in relevant part:

"The total compensation due shall be recoverable from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted. If any dispute or controversy arises as to the payment of compensation or as to liability therefor, the employee shall give notice to and make claim upon the last employer only and apply for a hearing against the last employer only. If the employee was employed by prior employers in an employment to the nature of which the disease was due and in which it was contracted, the hearing referee to

whom the case is assigned or the director on motion made in writing by the last employer shall join any or all prior employers, mentioned in the motion, as parties-defendant. * * * The hearing referee shall enter an order determining liability for compensation as between the employee and the last employer. The hearing referee shall apportion liability for compensation among the several employers in proportion to the time that the employee was employed in the service of each employer in the employment to the nature of which the disease was due and in which it was contracted and shall enter a separate order in favor of the last employer and against prior employers for their proportionate share of liability, which order may be enforced in the same manner as an award for compensation."

The appellants contend that under the statute two tests must be met before the last employer is entitled to apportionment. First, and employee must have been employed by prior employers in an employment in which the disease was contracted. Secondly, the employee must have been employed by prior employers in an employment to the nature of which the employee's disability was due.

As to the first contention, we feel the statute does not require proof that the disease was actually contracted while working for a prior employer. This interpretation was given to our statute in 3 Larson, Workmen's Compensation Law, § 95.32, p 508.161, which stated:

· "Several statutes which place initial liability, so far as the employee is concerned, upon the employer who provided the last injurious exposure, follow this provision with a procedure whereby liability may be apportioned among previous employers *whose employments have contributed.*" (Emphasis supplied.) *Larson, supra,* at 508.161.

Therefore, if the prior employments contributed

to the disease this is sufficient to hold the prior employers liable under the statute.

Furthermore, the determination of whether or not the employee was employed in an employment to the nature of which the employee's disease was due is primarily a question of fact. In the instant case the employee was exposed to paint fumes while in the appellant's employ and to dust while in the employ of Bay Castings. The depositional testimony of Dr. Ira Avrin was to the effect that exposure to paint fumes can aggravate, accelerate, or cause pulmonary emphysema.

The appellants, in an attempt to discredit findings, rely on other testimony to support their theory that the plaintiff was not exposed to fumes which caused her condition while employed by them. However, this Court must affirm, if there is any evidence in the record to support the findings made by the Workmen's Compensation Appeal Board. *Couch v Saginaw Malleable Iron Plant*, 42 Mich App 223; 201 NW2d 681 (1972); *Lemanski v Frimberger Co*, 31 Mich App 285; 187 NW2d 498 (1971). In the instant case there was sufficient evidence to support the board's findings and we must affirm as to Color Crafters subject to modification set forth hereinafter.[2]

## III.

The hearing referee determined that with respect to the right to seek reimbursement from the Silicosis & Dust Disease Fund after the payment of $12,500, Bay Castings would be entitled to such reimbursement while Color Crafters would not. The Workmen's Compensation Appeal Board or-

[2] Formerly MCLA 413.12; MSA 17.186, amended by MCLA 418.861; MSA 17.237(861).

dered any reference to dust disease stricken, stating:

"His [referee's] decisions are modified only to the extent of striking any reference to dust disease as defined by the Act. In accord with *Graham v Chrysler Corp,* 1971 WCABO 875, and subsequent 1971 decisions of this Board, defendants shall seek reimbursement from the Dust Disease Fund, if they deem that appropriate after payment of $12,500.00." (1972 WCABO 74, 79.)

What the appeal board said in *Graham, supra,* and seems to be saying in the instant case, is that the referee has no jurisdiction over the dust disease fund until the employer has paid $12,500 in benefits and a dispute has arisen over the employer's right to reimbursement from the fund.

The relevant statutes are MCLA 418.531; MSA 17.237(531) and MCLA 418.541; MSA 17.237(541). MCLA 418.531 reads as follows:

"Sec. 531. In all cases in which any carrier shall have paid, or cause to be paid, compensation for disability or death from silicosis or other dust disease either to the employee, or to another employer under the provisions of section 435, the carrier shall be reimbursed from the silicosis and dust disease fund for all sums so paid in excess of $12,500.00, excluding payments made pursuant to sections 315, 319, and 345 which have been paid by the carrier as a portion of its liability."

MCLA 418.541 reads in relevant part:

"Sec. 541. (1) All payments from the funds shall be determined by the trustees and made upon an order signed by a trustee. If a dispute arises between the trustees and a carrier as to any determination by the trustees or the obligation of any carrier to make payments on behalf of the second injury fund, the dispute shall be deemed to be a controversy concerning compen-

sation and shall be determined in accordance with this act.

"(2) In all cases in which the carrier shall be entitled to be reimbursed, notice of claim for reimbursement shall be filed with the trustees within 1 year from the date on which the right to reimbursement first accrues. After the carrier has established a right to reimbursement, payment shall be made promptly on a proper showing periodically every 6 months."

In *Graham v Chrysler Corp, supra,* the Workmen's Compensation Appeal Board discussed the fact that the employer himself is liable under the statute to the sum of $12,500 at which point the employer is eligible to make application for reimbursement by the Silicosis & Dust Disease Fund for any payments in excess thereof. It is then the burden of the employer to show that his liability is limited by statute and that he is entitled to such reimbursement. The board further took the position that at the time an employee's cause of action accrues the Silicosis & Dust Disease Fund is not an indemnifier of liability imposed upon the employer and that the payment of $12,500 as a minimum and the filing by the employer of an application for reimbursement within one year after such right to reimbursement accrues are prerequisites to any liability of the fund.

The board felt that allowing the issue of reimbursement from the fund to be determined at the initial hearing where the employee's rights are determined would effectively determine the liability upon the fund where none in fact may ever exist. To wit, the employer may never make payments in excess of the sum of $12,500 and, even in the case of admitted disability due to silicosis, the fund may never become liable because of the lack of payment of the sum required.

The board was of the opinion that there should

be no hearing or adjudication as to the liability of the fund until the maximum employer limit had been paid and that, when the employer made application in event of dispute with the fund, at that point then the employer could satisfy his burden of proof by introducing into evidence the record of any hearing which may have previously been held upon any dispute which might have existed between the injured employee and the employer. Such introduction of the prior record, in the opinion of the board, would serve as prima facie evidence, rebuttable by evidence submitted on behalf of the fund at any hearing held pursuant to statute to resolve disputes relating to the rights and liabilities existing between the employer and the Silicosis & Dust Disease Fund. This dismissal of the dust disease fund from the proceedings by the board was predicated upon the board's opinion in *Graham v Chrysler Corp, supra,* hence the decision will be examined in considerable detail. The board in *Graham* assumed that the presence of the dust fund in the employee's suit for compensation would require that the employee prove both his claim against the employer and show that his employer's liability is limited to a certain sum. In *Felcoskie v Lakey Foundry Corp,* 382 Mich 438, 446; 170 NW2d 129, 132 (1969), it was stated:

> "Hence whenever an employer asserts that the limitation of section 4 should be applied to the dust disease causing the disability for which compensation is sought, *such employer shall bear the burden of proving that such disease is so common and widespread as to present a threat to the industry comparable to silicosis, phthisis, or pneumoconiosis."* (Emphasis supplied.)

Clearly from the above it is established that the burden of proof is upon the employer and not upon

the employee. The employer must establish the $12,500 ceiling upon his liability and the employee need only show a permanent disability due to occupational disease. If the employer seeks reimbursement from the dust disease fund for expenditures over and above $12,500 it is his responsibility to show that he merits reimbursement from the fund contrary to the assumption of the board in its *Graham* opinion.

The board in *Graham* also indicated a fear that if the dust fund liability, although contingent upon the employer's prior payment of $12,500 in benefits, is determined in the initial proceeding as done in this case the procedure would effectively eliminate the statutory requirement for the minimum payment and the filing of the application for reimbursement within one year after accrual of right to reimbursement. There is no basis or substance to such a fear and the dust fund in its brief has cited no instance where such consolidation resulted in the lack of fulfillment of the above-mentioned statutory requirements. Any fair interpretation establishes that the statutory requirements for minimum payment and application for a reimbursement must be complied with and the only question that need not be litigated would be the liability of the dust fund, as this would be established in the initial hearing. The employer would have no right to reimbursement until he made a showing of the payment of $12,500 in benefits as a condition precedent.

The board in *Graham* also makes the objection that if the future liability of the dust fund is determined at such an early stage the fund's liability may be determined where none in fact may ever exist. There is some merit to this objection, as the fund would have been put to the expense of

litigating liability even though the liability might never ensue because of other developments which would preclude the employer's payment of the sum required for reimbursement. The disadvantage which this possibility indicates is outweighed by the economy of consolidation.

The board in *Graham* indicated that the record of the hearing as to the injury of the employee

" * * * may well have become res adjudicata *[sic]* of the rights and liabilities [which might have existed] between the employee and his employer and could well serve as prima facie evidence of the possible subsequent liability imposed upon the Silicosis & Dust Disease Fund." *Graham, supra,* at p 886.

Such conclusion is contrary to the rules of evidence. If the dust fund's participation in the original hearing is stricken the record of the prior decision could *not* be used against the dust fund at the later reimbursement hearing since the doctrine of res judicata requires identity of parties. *Johnson v Nationwide Life Insurance Co,* 7 Mich App 441, 446; 151 NW2d 840, 842 (1967). Furthermore the dust fund's right of cross-examination of the witnesses against it would be vitiated by the admission of the record of the original compensation proceeding into evidence if the dust fund was not a party to such original hearing.

As further justification for striking the dust fund as a party the appeal board in *Graham* stated:

"Consolidating these hearings which deal with rights and liabilities of different parties and which accrue at different periods of time contrary to the intent of the Legislature does not facilitate the administrative duties imposed upon anyone but tends to complicate and confuse and results in the shifting of responsibilities

placed upon an employer by the Legislature to the injured employee or else requires the employee to at least wait until the employer proves his right to something that may accrue in the future." *Graham, supra,* at 887.

To require two separate hearings as the appeal board has done will result in more time consumption and confusion and not less as urged in *Graham.* With all parties present at the first hearing, including the dust fund, the referee can get all the necessary information at one time and at a time reasonably proximate to the contraction of the disease. We fail to see any basis for confusion in having the referee in the same proceeding determine the employer's liability to the employee and the dust fund's future liability to the employer. If this is not done at the initial hearing, at the second hearing after payment of the sum of $12,-500 over a period of years, the employer will be obliged to bring back witnesses who were present at the first hearing in order to have them testify all over again since the record of the first hearing would be clearly inadmissible. It appears that it is more convenient and more administratively efficient to consolidate these actions.

The dust fund in this matter could have relied upon the same reasoning as employed in *Graham* and could have fought its joinder to the original hearing. The dust fund instead elected to resolve the matter and any dispute in this one hearing. We must encourage economy of judicial settlements and not frustrate it. The procedure of joining the dust fund was followed for a period of years prior to *Graham.* We find from reading the applicable statutes that there is no apparent reason to preclude simultaneous resolution of the

employee's claim against the employer and the employer's claim against the dust fund.

Bay Castings and Color Crafters both contend that even if the *Graham* decision is correct it would make no difference in the instant case because there was no objection to the participation of the dust fund in the hearing as a named party. Consequently, these two parties claim that the dismissal of the dust fund was erroneous because the fund had participated in all proceedings and should be bound by the judgment entered against it. The dust fund, on the other hand, argues that the appeal board could properly dismiss the fund from the action because the appeal board's review is *de novo* and further because lack of subject matter jurisdiction can never be waived.

It is true that the Workmen's Compensation Appeal Board hears cases *de novo. Fawley v Doehler-Jarvis Division of National Lead Co,* 342 Mich 100; 68 NW2d 768 (1955). It is well settled that the question of lack of jurisdiction over the subject matter cannot be waived and can be raised at any stage of the proceedings. *Millman Brothers, Inc v Detroit,* 2 Mich App 161; 139 NW2d 139 (1966). Thus, if the appeal board in *Graham* and in the instant case was correct in its interpretation of the statutes the fact that the dust fund participated in the original hearing and made no objection to such participation would be of no consequence because the action before the referee with reference to the liability issue would be absolutely void. *Fox v Board of Regents of the University of Michigan,* 375 Mich 238, 242–243; 134 NW2d 146, 148 (1965).

Both Bay Castings and Color Crafters claim that the issue of reimbursement was not properly before the appeal board because the dust fund did

not file a claim for review. This claim fails in light of the fact that the appeal board's hearing is *de novo. Pulley v Detroit Engineering & Machine Co,* 1 Mich App 346; 136 NW2d 762 (1965). Perhaps it would have been better procedure for the appeal board to indicate that it was going to consider the role of the dust fund. An application for review was filed by the fund as indicated by the file of the proceedings below. In any event the employers are charged with the knowledge that the review by the appeal board is *de novo.* Despite this the employers did not seek to limit the scope of the board's inquiry to the question of finding that the plaintiff had an occupational disease. They filed general claims for review. By this action they knowingly opened up the entire matter to review. *Thompson v Continental Motors Corp,* 320 Mich 219; 30 NW2d 844 (1948).

For the reasons indicated in this portion of the opinion we conclude that the board's interpretation of the applicable statutes in *Graham* and in this case is not correct. The referee did have jurisdiction of the subject matter of the employers' claim against the dust fund and it is proper to dispose of both the issue of the occupational disease and the liability of the dust fund in one hearing at the outset of the case. In fact we urge it for sake of efficiency and minimizing delay as an appropriate form of action in all future proceedings of this nature.

## IV.

We find no error on the question of the referee's apportionment of liability between the two employers and sufficient evidence in the matter before the appeal board to sustain affirming such

apportionment of liability and as a consequence we likewise affirm this finding.

The hearing referee found that, with reference to the employment at Bay Castings, the plaintiff had a dust disease but that she did not have such dust disease as pertains to her employment at Color Crafters. The net result of such finding is that Bay Casting's compensation payments to plaintiff would be the subject of reimbursement by the dust fund after Bay Castings became eligible and made application. The statute makes no provision for reimbursement to the Silicosis & Dust Disease Fund; thus Color Crafter's apportionment payments would continue to go to the last employer, to wit, Bay Castings, even after the latter began to receive reimbursement from the dust fund which could get nothing from Color Crafters.

The referee's order that plaintiff was suffering solely from a dust disease as to her employment with Bay Castings without apportionment of the amount of disability between that due to the dust disease and that due to other compensable causes creates a novel situation. MCLA 418.535; MSA 17.237(535) provides:

"Sec. 535. If an employee's disability is caused by a combination of silicosis or other dust disease and other compensable causes, a hearing referee shall apportion the amount of disability between that due to silicosis or other dust disease and other compensable causes. The trustees of the silicosis and dust disease fund shall reimburse the employer liable for compensation for that portion of the compensation paid in excess of $12,500.00 that the silicosis or other dust disease disability bears to the total disability."

Thus we are led to the conclusion that the referee was of the opinion that the plaintiff was suffering *solely* from a dust disease. On the other hand, in

ordering Color Crafters to pay 49.25% of the compensation as reimbursement or contribution to Bay Castings the referee found that plaintiff did not have a dust disease. These two positions are inconsistent.

Bay Castings cannot have the benefit of an apportionment payment from Color Crafters and reimbursement from the dust fund for the excess benefits over and above $12,500 as this definitely was not within the contemplation of the Legislature in creating these benefits. Bay Castings in its brief disclaims any desire for such double benefits. We therefore conclude that once the dust fund has commenced making reimbursement to Bay Castings, Color Crafters should not be required to contribute any further funds. Since there is no provision for reimbursing the dust fund in a case such as this, Bay Castings would actually be making a profit with no intent on the part of the Legislature to create such an incongruous situation. However, where hospital and medical benefits are concerned Bay Castings, even after payment of $12,500, would be required to continue to make payments for such benefits and Color Crafters should also continue to be liable for its 49.25% of these payments. MCLA 418.531; MSA 17.237(531) specifically excludes reimbursement for such hospital and medical expenses. Therefore with respect to these benefits the apportionment order should stand.

## V.

We find that the Workmen's Compensation Appeal Board's opinion in *Graham v Chrysler Corp, supra,* is too restrictive in taking the position that the Silicosis & Dust Disease Fund can never par-

ticipate in the hearing of a compensation claim until $12,500 in benefits have first been paid. There is no justification for such blanket prohibition in the statutory law nor do we find any case law to justify such prohibition. In the instant case the dust fund was a party to the hearing *without objection* and the results of that hearing with respect to the future liability of the dust fund are binding upon the fund. We encourage the joinder of the dust fund at such first hearing so that witnesses concerning the plaintiff's illness can be heard at one time and that time is more proximate to the contraction of the disease.

The employer must still make application for reimbursement within the statutory period and prove that he has in fact paid out more than $12,500 in benefits.

We affirm hereby the findings of the Workmen's Compensation Appeal Board except that we modify the same to terminate contribution by Color Crafters when the dust fund reimbursement to Bay Casting commences, except for hospital and medical benefits for which contribution by Color Crafters shall be a continuing obligation. We reverse the board's order striking the dust fund as a party to these proceedings and thereby reinstate the fund as a party as in the initial instance in this case. And further, we reverse the order of the board striking the referee's finding that plaintiff in fact has a dust disease and thereby reinstate the referee's finding on this point. We further find that the admission of Dr. Avrin's deposition was proper.

Affirmed in part and reversed in part and remanded to the board for entry of an order consistent with this opinion.

All concurred.