MILLER v DUNN PAPER COMPANY

1. WORKMEN'S COMPENSATION—APPEAL BOARD—FINDINGS OF FACT.

The nature and extent of an employee's disability as determined by the Workmen's Compensation Appeal Board is not within the scope of review of the Court of Appeals since the findings of fact of the appeal board, absent fraud, are conclusive (MCLA 418.861).

2. WORKMEN'S COMPENSATION—EMPLOYER'S LIABILITY—LIMIT—DATE OF INJURY.

An employer or his insurance carrier cannot be liable to an injured employee for workmen's compensation benefits in any amount greater than the statutory liability imposed on the date of injury.

3. STATUTES—CONSTRUCTION—ADMINISTRATIVE INTERPRETATION.

The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration by the courts.

4. WORKMEN'S COMPENSATION—EMPLOYER'S LIABILITY—SECOND INJURY FUND—DATE OF INJURY—STATUTORY AMENDMENTS.

An employer is liable for the amount of benefits provided by the Workmen's Compensation Act at the time of the injury to the employee; where the disability of an employee is total and permanent, the liability of the employer is for the duration thereof as to all benefits in effect at the time of the injury, and the second injury fund is liable only for the differential benefits which have accrued to an employee by amendments to the act subsequent to the date of injury.

5. WORKMEN'S COMPENSATION—OVERPAYMENT—DEPENDENTS—LACHES.

A challenge by an employer as to whether an injured employee

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation § 193 *et seq.*
[2] 58 Am Jur, Workmen's Compensation § 563 *et seq.*
[3] 50 Am Jur, Statutes §§ 384–390.
[4] 58 Am Jur, Workmen's Compensation § 283.
[5] 58 Am Jur, Workmen's Compensation § 395.

had dependents within the meaning of the Workmen's Compensation Act was too late where almost nine years elapsed before the claim of dependency was challenged and where no suggestion was made of fraud or deceitful purpose on the part of the employee; the employer was therefore not entitled to recovery of overpayment or credit against future payments.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 1 March 14, 1973, at Detroit. (Docket No. 14720.) Decided May 24, 1973.

Karrol Miller presented his claim for workmen's compensation benefits against Dunn Paper Company, Michigan Mutual Liability Company, and the Second Injury Fund. The referee awarded benefits holding the fund alone liable. The Workmen's Compensation Appeal Board reversed, finding the employer liable for certain benefits. Dunn Paper Company and Michigan Mutual Liability Company appeal. Affirmed in part, reversed in part, modified in part, and remanded with instructions.

*Cubitt & Cubitt* (by *Brian R. Schrope)*, for plaintiff.

*LeVasseur, Werner, Mitseff & Brown,* for defendants Dunn Paper Company and Michigan Mutual Liability Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Lee A. Decker* and *A. C. Stoddard,* Assistants Attorney General, for defendant Second Injury Fund.

Before: FITZGERALD, P. J., and V. J. BRENNAN and O'HARA,* JJ.

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

O'HARA, J. This appeal from an order of the Workmen's Compensation Appeal Board specifies four issues. Each is cast in terms of claimed legal error.

The first asserts that the board incorrectly determined as a matter of law that the injured employee was totally and permanently disabled through loss of industrial use of both legs or one arm and one leg as a result of accidental injury which arose out of and in the course of his employment.

We disagree. Despite the phrasing of the assignment of error, in reality what is involved is a conflict in medical testimony as to nature and extent of the employee's disability. The scope of review as to this issue is so well settled in this jurisdiction that it is unnecessary to burden our opinion with citations. Reference to the statute alone is sufficient. The findings of fact of the appeal board, absent fraud, are conclusive. MCLA 418.861; MSA 17.237(861). We affirm the board's finding.

Next appellants urge what is truly a claimed error of law. When as above the board finds an employee totally and permanently disabled as of a date between the effective dates of 1956 PA 195 and 1965 PA 44 (August 1, 1956 to September 1, 1965) is the employer or his carrier, if any, liable for benefits *only* for the first 500 weeks from the date of injury, with the Second Injury Fund[1] liable for *all* weekly benefits thereafter? The date of injury in this case was August 1, 1960. For 269 weeks therefrom, the number of weeks awarded for the specific loss of his arm, the employee was paid benefits voluntarily. He then filed an application for further benefits based on claimed total

---

[1] MCLA 418.501 *et seq.;* MSA 17.237(501) *et seq.*

disability. Upon submission of a medical report it was stipulated that if plaintiff would withdraw his application for hearing, voluntary payments would be resumed by the employer (carrier) with the fund paying differential benefits. The payments were computed on a stipulated basis of three dependents (a matter to which we will find it necessary to advert in discussion of another issue). These payments were continued for the full 500 weeks. When this period of benefit payments ended the employer's carrier filed a form with the commission noticing the cessation of payments for the reason that its liability was terminated after 500 weeks. Thereupon plaintiff employee filed another petition designated "petition for determination of rights". Having affirmed the board's finding of total and permanent disability we now turn to the question of the responsibility for the payment of benefits by dates. This responsibility is legal in nature since it depends upon statutory interpretation, and the judicial function of the determination of legislative intent of various amendatory provisions of the act.

Tenet one is that an employer or his insurance carrier cannot be liable to an injured employee in any amount greater than the statutory liability imposed on the date of injury. This is because of the constitutional proscriptions against impairing contract obligations and denial of due process.

Thus appellants could not be liable to appellee for any amount greater than their liability on August 1, 1960, the date of his injury. His injuries were severe. He lost his left arm by amputation between the elbow and shoulder and sustained injuries to both legs and his head.

At that time the employer and his insurer were limited to 500 weeks of compensation based upon

the number of his dependents *except for permanent and total disability as defined in sections 8a and 10.*[2] In that event the employee would be entitled to benefit payments for the duration of the permanent and total disability. Since the board's inviolate finding was that the employee was, continued to be, and still is, totally and permanently disabled, someone is liable for the continuing payment of benefits.

Here enters the Second Injury Fund. It supports the legal position taken by the board in its reversal of the referee. The board held that the employer or his carrier remain liable for the basic benefit payments in the amount due the employee as of the date of his injury, with the fund liable only for differential benefits. The fund's liability arises under the following provision of the act:

"Any permanently and totally disabled person as defined in this act who, on or after June 25, 1955, is entitled to receive payments of workmen's compensation under this act in amounts per week of less then is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall after the effective date of any amendatory act, by which his disability is defined as permanent and total disability or by which the weekly benefit for permanent and total disability is increased, receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now or shall hereafter be entitled to receive from his employer under the provisions of this act as the same was in effect at the time of his injury and the amount now provided for his permanent and total disability by this or any other amendatory act." MCLA 412.9; MSA 17.159. See cur-

[2] MCLA 412.8a; MSA 17.158(1); MCLA 412.10; MSA 17.160. MCLA 412.8a has since been repealed. MCLA 412.10 has been replaced by MCLA 418.361; MSA 17.237(361).

rent provisions: MCLA 418.351; MSA 17.237(351); MCLA 418.353; MSA 17.237(353); MCLA 418.355; MSA 17.237(355); MCLA 418.357; MSA 17.237(357); MCLA 418.359; MSA 17.237(359).

Appellant employer and carrier (and the referee) contend that the fund was liable not only for any differential payments due the employee prior to the expiration date of 500 weeks, but for *all* benefits thereafter.

Not so says the fund, (and the appeal board). The employer is liable for all *basic* benefits (those in effect at the time of the injury) from the date of injury for the duration of the total and permanent disability and the fund is liable only for the differential benefits. Admittedly the differing views result from the following language of the Supreme Court:

"We agree with appellant Chrysler Corporation's contention that the legislature has made it perfectly clear that when the loss-of-use classification was added to part 2, § 10, it was the intention of the legislature that 'payments of benefits for the newly defined loss-of-use permanent and total disabilities were to be from the second injury fund so that the burden of the change could be spread among all employers.' " *Rasar v Chrysler Corp,* 382 Mich 169, 175 (1969).

The appeal board faced this question before this case, but after *Rasar.* It discussed the question in depth in *Brandly v Darin & Armstrong, Inc,* 1972 WCABO 879. Significantly, it attached a copy of its opinion in that case to its opinion herein and explicitly incorporated it into its holding here. Thus it becomes part of the appeal board's holding in this case. We quote at length and with approval from the discussion of the author of *Brandly, supra,* the long-time and experienced member of the board, Storie, which was concurred in by the

participating members. First the board quoted the language from *Rasar* which we included earlier herein and which was relied upon by the referee. The board's opinion then recites:

"I concede that the above quote from the Supreme Court's holding in *Rasar, supra,* standing alone without an understanding as to what the specific question was which had been presented for the Court's consideration and which the Court was ruling upon, then it does appear that Item 7, § 10, Part II, which was first enacted through Act No. 195 of 1956 becomes the sole responsibility of the Second Injury Fund regardless of when [the] injury occurred. I point out, however, that if this is correct then it would appear to include the liability for the first 500 weeks as well as the balance of the benefits payable to the employee after 500 weeks because the Court said:

" 'It was the intention of the legislature that payments of benefits for the newly defined loss-of-use permanent and total disabilities were to be from the Second Injury Fund so that the burden of the change could be spread among all employers.'

"I submit that the Supreme Court was holding only that those cases where the injury occurred prior to the effective date of Act No. 195 of 1956 and which had resulted in the industrial loss of use of the limbs were the liability of the Second Injury Fund after 500 weeks.

"Conceding some ambiguity in the Court's holding as it affects the *Allen, supra,*[3] rule, it is, however, evident that the Legislature did not intend to impose all the liability upon the Second Injury Fund for injuries occurring after the effective date of Act No. 195 of 1956 which caused the industrial loss of use of the limbs as the term is defined in Item 7, § 10. It is well settled law that an employee is entitled to receive and the employer is liable for the payment of the benefits in effect on the date the injury occurs."

We learned from the Supreme Court in its opin-

---

[3] *Allen v Kalamazoo Paraffine Co,* 312 Mich 575 (1945).

ion on rehearing in *Magreta v Ambassador Steel Co,* 380 Mich 513, 519 (1968), the "construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration". We believe that the admonition and the principle it enunciates is particularly pertinent to the statutory interpretation question involved in the case at bar.

The relevant holding of the appeal board here is the correct holding in law, namely that the employer was and remains liable for the amount of benefits provided by the act at the time of the injury and because the disability is total and permanent for the duration thereof. The fund is liable for the differential benefits which have accrued to plaintiff by reason of amendments subsequent to the effective date of 1956 PA 195. As to this issue then we affirm the board also.

If the language in *Rasar* has generated confusion thus causing the sharp dichotomy between the interpretation of the employer and the referee, as opposed to that of the appeal board, the fund, and this Court, it may be possible that upon proper and timely application our Supreme Court might take this important question and settle it with finality.

The third assignment of error embraces questions of mixed fact and law. Candor compels the statement that the law applicable is much more mixed than the *facts.* The question, most succinctly stated, is whether the injured employee had dependents within the meaning of the act[4] on the date of his injury thus determining the amount of benefits to which he was then entitled.

On this question we disagree with the board. We

[4] MCLA 412.9(b), (c); MSA 17.159(b), (c). For current provisions *see supra.*

make haste to add that we do not change our policy position as to the interpretation of the statute by the board as expressed earlier herein. Rather we point out that as a result of the varied holdings of the board and judicial modifications thereof we can find no established interpretation by the board to which we can attribute "respectful consideration".

The unchallenged facts in this case are that the employee long before his injury had entered into a relationship with a married woman whose prior ceremonial marriage had never been dissolved. Although the parties lived to all appearances as man and wife, and while two children were born to them, by the strict legal test they obviously could not have contracted a valid marriage. Denial of benefits in a similar case is reflected in this holding:

"We are of the opinion that in order to create a family relationship there must exist a condition devoid of moral turpitude. In the case at bar, the responsibility of the support of the 2 children rests upon their mother and father * * * . Public policy does not sanction the payment of compensation arising out of meretricious cohabitation. We hold that plaintiffs were not members of the deceased's family within the meaning of the compensation act." *McDonald v Kelly Coal Co,* 335 Mich 325, 330 (1952).

However, the basic holding has been modified in any number of cases based upon laches, estoppel, and stipulated facts. To a degree all of those elements are involved herein.

All of the payments made to the employee over the years in this case were based upon the amount payable to an injured workman with three dependents. The referee found with record support, and his holding was affirmed by the board, that the employee

herein did not, in fact, have those dependents within the meaning of the act. The referee further found, however, that because of lack of diligence on the part of the employer in investigating the claimed dependency, the failure to assert a challenge thereto and the absence of any indication of purposeful deceit on the part of the employee, the employer was estopped at the time of hearing to challenge the previously accepted dependency status.

On this issue the board reversed the referee. However, we point out as being of controlling import that the board did not do so on the basis of its *finding of fact of non-dependency.* Rather it based its reversal of the referee on a question of law. It applied to the found facts the following provision in the act:

"Neither the payment of compensation nor the accepting of the same by the employee or his dependents, nor the signing of receipts therefor, shall be considered as a determination of the rights of the parties under this act." MCLA 413.6; MSA 17.180.[5]

This statutory provision is, of course, not insulated from the overriding legal principles of waiver and estoppel which are applied to a whole body of statutory law. In the whole skein of judicial interpretation of this provision the Supreme Court has constantly adverted to "timely" invocation of the proviso. Such holdings are virtually legion by both the board and the courts. Characteristic of these holdings is *Samels v Goodyear Tire & Rubber Co,* 323 Mich 251, 259 (1948).

"[W]here *there has been no laches by the employer,* the commission, when called upon by proper petition,

---

[5] *See* current provisions: MCLA 418.831; MSA 17.237(831); MCLA 418.841; MSA 17.237(841).

should determine whether there has been an overpayment under the facts * * * and order the return of * * * overpayment either directly or by a credit on future payments." (Emphasis supplied.)

If this weren't the law it ought to be. In this case almost nine years elapsed before the claim of dependency was challenged. This principle has been applied in the field of general law. In this case no one seriously suggests fraud or deceitful purpose on the part of the employee. Thus we think this general principle applies:

"The plaintiff makes no claim *of fraud or concealment* on the part of the defendant, but rests his right to go to the jury solely upon his statement that, although he had the means under his hand to determine accurately the condition of the account between himself and the defendant, instead of availing himself of those means, he chose to execute the contract of settlement in ignorance of the facts * * * . This is not a case of mutual mistake. Under these circumstances, we cannot say that the mistake on the part of the plaintiff in its execution is such * * * as will permit him to avoid its binding effect upon him three years after it became operative." (Emphasis supplied.) *Brevoort v Partridge,* 156 Mich 359, 361–362 (1909).

We know of no reason why this principle should not be applicable to the case at bar, and we hold it is.

In our holding we have not addressed ourselves to the effect of the stipulation for withdrawal of the plaintiff's petition in return for the resumption of voluntary payments. It was executed by all parties here involved. If need be we could invoke the strong language in *Dana Corp v Employment Security Commission,* 371 Mich 107, 110 (1963).

"To the bench, the bar, and *administrative agencies,* be it known herefrom that the practice of submission of

questions to any adjudicating forum, judicial or quasi-judicial on stipulation of fact, is praiseworthy in proper cases. It eliminates costly and time-consuming hearings. It narrows and delineates issues. But once stipulations have been received and approved they are sacrosanct. Neither a hearing officer nor a judge may thereafter alter them. This holding requires no supporting citation. The necessity of the rule is apparent. A party must be able to rest secure on the premise that the stipulated facts and stipulated ultimate conclusionary facts as accepted will be those upon which adjudication is based. Any deviation therefrom results in a denial of due process for the obvious reason that both parties by accepting the stipulation have been foreclosed from making any testimonial or other evidentiary record." (Emphasis supplied.)

In the stipulation dependency was not specifically admitted. Neither was it affirmatively specified as one of the issues which any party to the stipulation would be permitted to challenge later. Were it necessary to invoke *Dana,* it might be controlling.

We hold specifically that the challenge to the employee's dependency status came too late.

This holding renders moot the fourth assignment of error concerning recovery of benefits paid by the employer and the fund. Since the board in express terms allowed credit to the employer and the fund for any amount paid in excess of $33 per week after November 20, 1968, this holding is reversed. Recovery of overpayment and credit against future payments are denied.

We affirm in part, reverse in part, and modify in part. The case is remanded to the appeal board with instructions to enter an order which will conform with our opinion.

All concurred.