LaFOREST v VINCENT STEEL PROCESSING, DIVISION OF
LETTS INDUSTRIES

1. Workmen's Compensation—Time of Injury—Disease—Last Day
   of Work—Statutes.

   The time of injury or date of injury under the Workmen's
   Compensation Act shall in the case of a disease or in the case
   of an injury not attributable to a single event be the last day of
   work in the employment in which the employee was last
   subjected to the conditions resulting in disability or death
   (MCLA 412.1, 418.301).

2. Appeal and Error—Workmen's Compensation—Appeal Board—
   Findings of Fact—Legal Standards—Evidence.

   The findings of fact made by the Workmen's Compensation
   Appeal Board are conclusive on appeal; however, the appeal
   board's decision will be overturned when it is contrary to the
   law, misapplies legal standards, or is not supported by compe-
   tent, material, and substantial evidence on the whole record.

3. Workmen's Compensation—Occupational Disease—Time of In-
   jury—Reporting to Work—Layoff—Statutes.

   The time of injury for an employee suffering from an occupa-
   tional disease is not the day on which the employee last
   reported to work where the employee did not work on this day

References for Points in Headnotes

[1, 3] 58 Am Jur, Workmen's Compensation §§ 245, 409.
   Workmen's compensation: date of accident or date when injury
   becomes manifest as time from which period for filing claim
   commences to run. 108 ALR 316.
[2] 58 Am Jur, Workmen's Compensation § 530 et seq.
[4] 58 Am Jur, Workmen's Compensation § 252.
[5] 73 Am Jur 2d, Statutes § 350.
   58 Am Jur, Workmen's Compensation §§ 33, 404.
[6] 58 Am Jur, Workmen's Compensation § 342.
   Workmen's compensation: termination of employment before occur-
   rence of disability or disease attributable to employment as
   affecting right to compensation. 104 ALR 1210.
[7] 58 Am Jur, Workmen's Compensation § 340 et seq.

but was laid off because no work was available for him due to his physical limitations (MCLA 412.1).

4. Workmen's Compensation—Dust Diseases—Silicosis and Dust Disease Fund—Reimbursement—Burden of Proof—Threat to Industry—Silicosis—Phthisis—Pneumoconiosis—Statutes.

An employer who has made compensation payments for disability or death from a dust disease has the burden of proving that the dust disease is so common and widespread as to present a threat to the industry comparable to silicosis, phthisis, or pneumoconiosis before the employer may be reimbursed by the Silicosis and Dust Disease Fund for payments in excess of $12,500 (MCLA 417.5).

5. Workmen's Compensation—Right to Compensation—Accrual of Right—Applicable Law.

The law in force when a cause of action accrues, or when the right to workmen's compensation springs into existence, controls the amount and duration of compensation to be paid an injured employee.

6. Workmen's Compensation—Occupational Diseases—Prior Employers—Last Employers—Apportionment of Liability—Statutes—Effective Date of Statute—Cause of Action.

A prior employer may be held liable for compensation for an occupational disease under a provision of the Workmen's Compensation Act which apportions liability between a claimant's last employer and his prior employers where the claimant's cause of action arose after the effective date of the statutory provision, even though the claimant's employment with the prior employer terminated before that statutory provision was in effect (1962 PA 189; MCLA 417.9).

7. Workmen's Compensation—Apportionment of Liability—Insurance Companies—Prior Employers.

The Workmen's Compensation Act makes no provision for apportionment of liability between successive insurance carriers of an employer; therefore, the carrier that insured a prior employer on a claimant's last day of work in which he was last subjected to conditions resulting in disability is liable for the entire compensation apportioned to the prior employer, even though the employer had had several insurance carriers at different times during the claimant's employment.

Appeal from the Workmen's Compensation Ap-

peal Board. Submitted Division 1 December 10, 1974, at Detroit. (Docket Nos. 19084, 19094.) Decided March 11, 1975. Leave to appeal applied for.

Claim by Marion LaForest individually and on behalf of Harry LaForest, deceased, against Vincent Steel Processing, Division of Letts Industries, Vincent Steel Processing Company, Employers Mutual Liability Insurance Company, Michigan Mutual Liability Company, and Home Indemnity Company, for workmen's compensation. The Silicosis and Dust Disease Fund was added as a party. The Workmen's Compensation Appeal Board modified an award of compensation, apportioned the liability for the award between the two employers, and apportioned the prior employer's liability among its insurance carriers. Recovery against the Silicosis and Dust Disease Fund was denied. Vincent Steel Processing, Division of Letts Industries, and Employers Mutual Liability Insurance Company, and Vincent Steel Processing Company and Home Indemnity Company, appeal by leave granted. Affirmed in part, reversed regarding the apportionment of liability among the insurance carriers of the prior employer.

*Samuel A. Meklir, P. C.,* for plaintiff.

*George E. Ganos,* for Vincent Steel Processing, Division of Letts Industries, and Employers Mutual Liability Insurance Company.

*LaVasseur, Werner, Mitseff & Brown* (by *Grahame G. Capp),* for Vincent Steel Processing, Division of Letts Industries, and Michigan Mutual Liability Company.

*Lacey & Jones* (by *Hayim I. Gross),* for Vincent

Steel Processing Company and Home Indemnity Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *David J. Watts, Eileen D. Zielesch,* and *A. C. Stoddard,* Assistants Attorney General, for the Silicosis and Dust Disease Fund.

Before: BRONSON, P. J., and McGREGOR and CARLAND,* JJ.

McGREGOR, J. This is a consolidation of two appeals arising out of the same workmen's compensation case.

In 1934, Harry LaForest began work for Vincent Steel Processing Company as a truck driver and continued in that capacity when the corporate entity became Vincent Steel Processing, a Division of Letts Industries, on January 1, 1960.

Mr. LaForest drove a truck during the 34 years he was employed with the corporate entities. Until his last day of work, on November 23, 1966, Mr. LaForest spent one to four hours a day in the steel treating plant, gathering products for delivery and loading them on his truck. While in the plant, LaForest was exposed to harmful air pollutants, including smoke and oil fumes, and carbon and cyanide dust. LaForest was forced to retire for health reasons on December 7, 1967, and died from emphysema and chronic bronchitis on August 13, 1968. It is undisputed that the decedent was entitled to compensation benefits and that his death was the result of an occupational disease.

During his lifetime, decedent filed an application for hearing with the Workmen's Compensation

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Bureau alleging that he suffered a personal injury in the form of an occupational disease while working for these corporate entities. Before the matter could proceed to a hearing, LaForest died. His widow then filed an application for hearing, alleging that her husband's death was due to an occupational disease caused by constant exposure to atmospheric pollutants and strenuous work while in the employ of the defendant employers.

The workmen's compensation referee determined that plaintiff's widow was entitled to weekly compensation benefits commencing on November 24, 1966, after decedent's last day of work, until his death on August 13, 1968, and further, that she was entitled to weekly compensation benefits for the death of her husband attributable to the November 23, 1966 date of disablement for a period of 500 weeks. The referee's award also granted a $750 burial expense benefit and expenses for the last illness in the amount of $2,022.22. The award provided that the Silicosis and Dust Disease Fund was to reimburse the employer for payments of weekly compensation benefits exceeding $12,500. The Silicosis and Dust Disease Fund, the two corporate entities, and their respective insurers appeal.

The Workmen's Compensation Appeal Board rendered a decision on November 28, 1973, modifying the decision of the hearing referee. The board provided that weekly compensation benefits during the decedent's life and benefits after his death would not exceed 500 weeks. The board also provided for apportionment of the legal liability between the insurers of the two corporate entities. The board found that Vincent Steel Processing Company was a prior employer within the meaning of the workmen's compensation statute, and

would therefore be liable for 79% of the total liability incurred. This determination was based upon the fact that, of the total time which the decedent worked for these two entities, Vincent Steel Processing Company employed plaintiff 79% of the total time, and Vincent Steel Processing, a Division of Letts Industries, employed plaintiff for the remaining 21%.

(Vincent Steel Processing Company will hereinafter be referred to as Company, and Vincent Steel Processing, a Division of Letts Industries, will hereinafter be referred to as Division.)

During the entire period of decedent's employment with Company and Division, the corporate workmen's compensation risk was covered by 11 different insurers. Those particularly pertinent to this appeal are: Home Indemnity Company (January 1, 1954 to January 1, 1959); Michigan Mutual Liability Company (January 1, 1959 to January 1, 1960, for Company; January 1, 1960 to November 1, 1966, for Division); and Employers Mutual Insurance Company (beginning November 1, 1966).

The Workmen's Compensation Appeal Board apportioned the liability of the various workmen's compensation carriers insuring Company. Although Company had been insured by ten different carriers during decedent's employment, the appeal board found Michigan Mutual Liability liable for 6% of the 79% of Company's liability, and found the Home Indemnity Company liable for the remaining 94% of the 79% of the compensation benefits.

Finally, the appeal board held that the employers and insurance carriers were not entitled to reimbursement from the Silicosis and Dust Disease Fund, since they had failed to sustain their burden of proving that the disease process which caused

the disablement and death of plaintiff's decedent was so common and widespread as to present a threat to the industry comparable to silicosis, phthisis, or pneumoconiosis.

Two separate applications for leave to appeal were filed following the board's decision. This Court granted leave in both cases and, on its own motion, ordered the companion cases consolidated for a complete appellate determination of the controversies in a single proceeding. This Court has rearranged and consolidated the numerous issues raised in both appeals; those issues meriting discussion are as follows:

I. *Did the appeal board err in finding November 23, 1966 to be the date of injury?*

The last day the decedent worked was November 23, 1966. However, he did return to the plant on June 5, 1967, and reported to the office manager, Mr. Green, but because there was no work available due to his physical limitations, he was placed on layoff status.

MCLA 412.1; MSA 17.151 (now MCLA 418.301; MSA 17.237[301]), provides in part:

"The term 'time of injury' or 'date of injury' as used in this act shall in the case of a disease or in the case of an injury not attributable to a single event be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death."

Employers Mutual maintains that the appeal board erred in upholding the referee's decision which found November 23, 1966 to be the date of decedent's personal injury. Employers Mutual asserts that, since June 5, 1967 was the last day that

the decedent was in the plant where he would be exposed to the atmospheric pollutants which were found to be the cause of his death, that date was the date of his personal injury.

The appeal board found that November 23, 1966 was the decedent's last day of work. This finding was based upon the testimony of a co-employee who stated that November 23, 1966 was the last time he saw the decedent at work. Further, the office manager testified that the decedent's last day of work was November 23, 1966. While the decedent reported to work on June 5, 1967, there was no testimony at the hearing that the decedent did, in fact, do any work that day; rather, the testimony clearly establishes that the decedent was laid off that day because there was no work available due to his physical limitations.

In *Skowronski v Ajax Forging & Casting Co*, 54 Mich App 136, 140; 220 NW2d 725 (1974), this Court stated:

"The findings of fact made by the WCAB are conclusive on appeal [citation omitted]. However, the appeal board's decision will be overturned when it is contrary to the law, misapplies legal standards, or is not supported by competent, material, and substantial evidence of the whole record."

In the instant case, there was substantial evidence to show that decedent's last day of work was November 23, 1966. Further, MCLA 412.1; MSA 17.151 clearly states that the date of injury in the case of a disease shall be the "last day of *work* in the employment in which the employee was last subjected to the conditions resulting in disability or death". (Emphasis supplied.) The appellant's assertion that June 5, 1967 constituted decedent's "last day of work", since the decedent reported to

the office manager who was located in the plant and, thus, was exposed to the pollutants in the air and thereby subjected to the conditions resulting in his disability and death, is without merit. The statute requires more than mere exposure to the conditions resulting in disability or death; it requires *"work* in the employment in which the employee was last subjected to the conditions resulting in disability or death". (Emphasis supplied.) The undisputed testimony clearly shows that the decedent did not *work* on June 5, 1967.

Since there is competent, material and substantial evidence on the whole record to support the appeal board's finding of fact, we affirm its determination that the decedent's date of injury was November 23, 1966.

II. *Did the appeal board err in dismissing the Silicosis and Dust Disease Fund from the proceedings?*

The insurance carriers of Company and Division claim that the appeal board erred in reversing that portion of the 'referee's decision which directed the Silicosis and Dust Disease Fund to reimburse the last employer, after plaintiff has been paid a total of $12,500 in weekly benefits.

The dust disease fund maintains that, in order for the employer of an employee disabled by an occupational lung disease to merit a limitation of the employer's liability under the provisions of MCLA 417.5; MSA 17.223(1) (now MCLA 418.531; MSA 17.237[531]), the employer must show that the lung disability in question meets the criteria established by the Supreme Court in *Schoppe v Calumet & Hecla, Inc,* 382 Mich 450; 170 NW2d 134 (1969), and *Felcoskie v Lakey Foundry Corp,* 382 Mich 438; 170 NW2d 129 (1969).

In *Felcoskie,* the Court addressed itself to the issue of what diseases were included within the scope of MCLA 417.4; MSA 17.223.[1]

"On the contrary, the legislative history of this act convinces us that 'silicosis or other dust disease' as that phrase has always been used in section 4 is intended to limit compensation to silicosis, phthisis, pneumoconiosis, or other dust disease *posing such a general threat to the industry.* [Court's emphasis.]

"Hence, whenever an employer asserts that the limitation of section 4 should be applied to the dust disease causing the disability for which compensation is sought, such employer shall bear the burden of proving that such disease is so common and widespread as to present a threat to the industry comparable to silicosis, phthisis, or pneumoconiosis.

"If the employer fails to establish this, his liability for compensation shall not be limited by section 4." 382 Mich 446.

However, since the decedent's date of injury was after May 1, 1966, MCLA 417.4 is not applicable in the case at bar. MCLA 417.4(a); MSA 17.223(a). Rather, the applicable statute is MCLA 417.5; MSA 17.223(1), which provides in part:

"(a) On May 1, 1966, there is hereby created a special fund to be known as the silicosis and dust disease fund.

"(b) In all cases in which the employer shall have paid, or cause to have been paid, compensation for disability or death from silicosis or other dust disease, the employer or his insurance carrier (including the state accident fund), as the case may be, shall be

---

[1] MCLA 417.4 provides in part: "Compensation shall not be payable for partial disability due to silicosis or other dust disease. In the event of temporary or permanent total disability or death from silicosis or other dust disease, notwithstanding any other provisions of this act, compensation shall be payable under this part to employees or to their dependents in the following manner and amounts: * * * In no event shall such compensation exceed an aggregate total of $10,500."

reimbursed from the silicosis and dust disease fund for all sums so paid in excess of an aggregate total of $12,500.00 excluding payments for medical and hospital coverage as set forth in part 2, section 4."

The crucial issue is, therefore, whether the meaning of "silicosis or other dust disease" as interpreted by the Court in *Felcoskie* should be applied in the context of MCLA 417.5.

In *Goodman v Bay Castings Division,* 49 Mich App 611; 212 NW2d 799 (1973), this Court, examining MCLA 418.531; MSA 17.237(531) (MCLA 417.5 was the forerunner of this statute), cited the above-quoted language from *Felcoskie, supra,* as controlling.

While the Supreme Court, in *Felcoskie,* interpreted silicosis or other dust disease within the context of MCLA 417.4, which merely limited the employer's liability, *Goodman, supra,* indicates that the *Felcoskie* test is likewise to be applied to a reimbursement situation in the context of MCLA 417.5. The legislative purpose of both statutes is the same, namely, to prevent certain types of dust diseases prevalent in certain industries from creating an intolerable burden among employers in those industries.

The appellants claim that the testimony of Dr. Larkin established that the disease which caused the decedent's death presented a sufficient threat to the industry to meet the tests set forth in *Schoppe and Felcoskie, supra.* While the evidence produced does indicate that the conditions to which the deceased was exposed did represent a substantial hazard to the health of the average *individual,* no evidence was introduced which would illustrate, as required by *Felcoskie,* that the exposure was "so common and widespread as to

present a threat to the *industry* comparable to silicosis, phthisis, or pneumoconiosis".

The appeal board stated in its opinion that, while the employers had every opportunity to present proofs necessary to meet their burden under *Felcoskie* and *Schoppe,* they failed to do so. We agree. Therefore, the appeal board's order which dismissed the Silicosis and Dust Disease Fund from the proceedings is affirmed.

III. *Did the Workmen's Compensation Appeal Board err in apportioning the compensation award between the last employer and the prior employer, under MCLA 417.9; MSA 17.228 (now MCLA 418.435; MSA 17.237[435]) in the case of an occupational disease, where the prior employment terminated before the effective date of the act, and the date of disablement occurred after the effective date of the act?*

Company and its two insurers, Home Insurance and Michigan Mutual maintain that in order for a prior employer, that is to say one who previously employed decedent but prior to the effective date of the statute, to be liable under the apportionment section of the statute, it would be necessary for the Legislature to specifically intend that the apportionment statute be retroactive and all those insurance carriers who previously were not liable for apportionment benefits now be made liable.

Home Insurance contends that the cases of *Briggs v Campbell, Wyant & Cannon Foundry Co,* 379 Mich 160; 150 NW2d 752 (1967), *Leonard v Lans Corp,* 379 Mich 147; 150 NW2d 746 (1967), and *Dean v Arrowhead Steel Products Co,* 5 Mich App 691; 147 NW2d 751 (1967), hold that the amendment to the apportionment statute was to

have no retroactive effect. Since the apportionment statute is only prospective in operation, there can be no application of that statute to an employment ending before January 1, 1960.

Division and its insurer, Employers Mutual Liability, rely upon *Pentrich v Dostal Foundries,* 28 Mich App 263; 184 NW2d 316 (1970), as being dispositive of this issue. In *Pentrich,* this Court applied the apportionment provision of MCLA 417.9 against an employer who had ceased to employ the disabled employee in June of 1960, when the employee's disability arose in November of 1966, after the effective date of the statute.

Company and its insurers submit that *Pentrich* is not at all dispositive of this issue since no claim was made in that case that an employment of a "prior employer" which terminated completely before the effective date of the apportionment statute should thereby be excluded from the statute. No issue of the retroactivity of the statute with reference to prior employers who previously were not liable was discussed in *Pentrich,* therefore, this issue was not briefed or reached in *Pentrich.* Accordingly, the holding of that case is in no way dispositive of the issue raised in this appeal.

Appellant's position, although excellently presented and logically argued, is faulty in one respect. The retroactivity of the apportionment statute is not at issue in this case.

In *Trellsite Foundry & Stamping Co v Enterprise Foundry,* 365 Mich 209; 112 NW2d 476 (1961), the Court held that the apportionment provision of MCLA 417.9 was unconstitutional, since it failed to provide for notice to the prior employers with an opportunity to appear at the original hearing. The Legislature then enacted amendatory 1962 PA 189 which cured this consti-

tutional defect. The effective date of the statutory amendment was March 28, 1963.

Appellants correctly state that the cases of *Briggs, Leonard* and *Dean, supra,* all held that the amendments to the apportionment statute were not to have retroactive effect. However in each of these cases the date of disablement was *prior* to March 28, 1963. Each case specifically states that at the time the employee was disabled there was no apportionment statute in existence.

In the case at bar, decedent was disabled on November 23, 1966. Therefore, the law in effect on the date decedent was disabled was MCLA 417.9, as amended.

The law in force when the cause of action accrues, or when the right to compensation springs into existence controls the amount and duration of compensation to be paid an injured employee. *Gauthier v Campbell, Wyant & Cannon Foundry Co,* 360 Mich 510; 104 NW2d 182 (1960), *Welch v Westran Corp,* 45 Mich App 1; 205 NW2d 828 (1973), *Miller v Dunn Paper Co,* 47 Mich App 471; 209 NW2d 519 (1973).

We reject the appellants' claim that a prior employer cannot be brought in under the apportionment statute, even though the decedent's cause of action arose after the effective date of the amended statute, where his employment with the prior employer terminated prior to the effective date of the statute.

In *Nicholas v St Johns Table Co,* 302 Mich 503; 5 NW2d 442 (1942), the Court held that the disablement caused by an occupational disease was compensable where the date of disablement occurred after the effective date of the occupational disease amendment to the Workmen's Compensation Act, notwithstanding the fact that the claim-

ant may have contracted the disease prior to the effective date of the act.

The appellants' claim that *Pentrich, supra,* is not dispositive of this issue is without merit. Appellants base their argument on the fact that, while the facts in *Pentrich* and the case at bar are almost identical, the Court in *Pentrich* did not discuss the issue of retroactivity of the statute. The appellants' logic is again fallacious, since retroactivity of the statute was neither an issue in *Pentrich,* nor is it an issue in the case at bar.

While the precise issue decided in *Pentrich* was the method of apportionment between the last employer and a prior employer, the Court applied the apportionment provision against an employer who had ceased to employ the disabled employee prior to the effective date of the statute, where the date of disability arose after MCLA 417.9 became effective. The Court, in order to determine how the employment of a "prior employer" was to be calculated, by necessity had to determine whether the defendant was a "prior employer" within the meaning of the apportionment statute. The fact that the apportionment statute was applied against a "prior employer" who ceased to employ the claimant before the effective date of the statute, where the cause of action arose after the effective date of the statute, is consistent with the legislative intention to make apportionment binding on all prior employers whenever the cause of action arose after March 28, 1963. To construe the act in any other way would be to destroy the remedy and the Legislature could not be deemed to have intended this result.

The law on the date of disability is controlling. The Workmen's Compensation Appeal Board did not err in apportioning the compensation award

between the last employer and the prior employer in this case, since the date of disablement occurred after the effective date of the act.

IV. *Did the Workmen's Compensation Appeal Board err in apportioning the prior employer's liability between the insurance carriers of the prior employer?*

The applicable apportionment statute, MCLA 417.9 (now MCLA 418.435) states in relevant part:

"The total compensation due shall be recoverable from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted. If any dispute or controversy arises as to the payment of compensation or as to liability therefor, the employee shall give notice to and make claim upon the last employer only and apply for a hearing against the last employer only. If the employee was employed by prior employers in an employment to the nature of which the disease was due and in which it was contracted, then the workmen's compensation department on motion made in writing by the last employer shall join any or all prior employers, mentioned in said motion, as parties-defendant. * * * The workmen's compensation department shall enter an order determining liability for compensation as between the employee and the last employer. The department shall apportion liability for compensation among the several employers in proportion to the time that the employee was employed in the service of each employer in the employment to the nature of which the disease was due and in which it was contracted and shall enter a separate order in favor of the last employer and against prior employers for their proportionate share of liability, which order may be enforced in the same manner as an award for compensation."

Thus, it is apparent that while the Workmen's Compensation Act provides for apportionment of

liability between *employers,* it makes no provision for apportionment of liability between *insurers.* The question then becomes, whether the courts can extend the provisions of this apportionment statute to apportion liability between insurers of prior employers without express legislative guidance.

A similar question was presented to the Court in *Sosnowski v Dandy Hamburger,* 384 Mich 221; 180 NW2d 761 (1970). The Court there framed the issue presented as follows:

"When a claimant's occupational disease develops gradually to a condition of disability while the claimant works for a single employer, and the employer has changed insurance carriers during this period, which insurer should pay the compensation?" 384 Mich 226.

The Court held that the insurance carrier for the risk on the date of injury (disablement) should be liable for the entire compensation in the absence of applicable statutory provisions. The Court explained this holding in footnote 3, p 226, as follows:

"Although our legislature has provided for apportionment of liability among successive employers in certain cases (MCLA 418.435 [Stat Ann 1970, Cum Supp § 17.237(435)]), no similar provision has been made for apportioning liability among successive insurers of the same employer. It is for the legislature, and not this Court, to provide for such apportionment if it is deemed appropriate."

Although *Sosnowski* is not factually identical to the case at bar, we heed the manifest wisdom contained in that unanimous Supreme Court opinion. The statute provides for apportionment of liability among successive employers only, no similar provision has been made for apportioning lia-

bility among successive insurers. It is for the Legislature, not this Court, to provide for apportionment in such cases, if it is deemed appropriate. The appeal board erred in apportioning the liability between the successive insurance carriers of the prior employer.

Based upon the rationale of *Sosnowski,* we hold that where liability is apportioned between employers in the case of a disease, the insurer of the prior employer on the risk on the last day of work in which the claimant was last subjected to the conditions resulting in disability shall be liable for the entire compensation apportioned to the prior employer. Michigan Mutual is therefore liable for 100% of the proportional compensation award assessed against Company, as the decedent's prior employer.

Lastly, appellants allege as error the appeal board's award to the widow of compensation for claims which accrued during decedent's lifetime and the expenses of decedent's last illness. Appellants allege that the only proper party to collect these payments would be the personal representative of the decedent.

On November 2, 1973, prior to the issuance of the appeal board's opinion and order, Mrs. LaForest obtained letters of probate authority from the Wayne County Probate Court. Thus, plaintiff-appellee now has standing as personal representative of the deceased to collect the benefits which accrued to her husband prior to his death and, also, the expenses of decedent's last illness. Since Mrs. LaForest is both the sole dependent of the decedent and the decedent's personal representative, the issue is moot, and need not be decided.

Affirmed in part, reversed in part, and remanded for an entry of an order consistent with this opinion. Costs awarded in favor of plaintiff-appellee only.