STOTTLEMEYER v GENERAL MOTORS CORPORATION

Docket No. 56626. Argued February 4, 1976 (Calendar No. 5).—Decided February 14, 1977.

Ronald Stottlemeyer claimed workmen's compensation benefits against his employer, General Motors Corporation, alleging that he became disabled by an occupational disease caused by exposure to smoke, dust, fumes, and other pulmonary irritants. The plaintiff's former employers, Baldwin Montrose Chemical Company and Baldwin Rubber Company, and the Silicosis and Dust Disease Fund were added as parties defendant; liability for this disability was apportionable among the plaintiff's prior employers, and the plaintiff's entitlement to full benefits is not challenged. After a total of $12,500 in workmen's compensation benefits was paid to the plaintiff, defendants petitioned the Bureau of Workmen's Compensation seeking reimbursement from the Silicosis and Dust Disease Fund for additional sums expended and challenged the constitutionality of the fund as presently administered. The Workmen's Compensation Appeal Board denied reimbursement. The Court of Appeals, D. E. Holbrook, P. J., and R. B. Burns and Allen, JJ., denied leave to appeal (Docket No. 20092). Defendant Baldwin Rubber Company appeals. *Held:*

1. "Silicosis or other dust disease", as used in the statute creating the Silicosis and Dust Disease Fund, limits reimbursement from the fund to reimbursement for compensation paid because of silicosis, phthisis, pneumoconiosis, or other dust disease posing a threat to the industry comparable to that posed to the mining, quarrying, and grinding industries by silicosis, phthisis, and pneumoconiosis. The statute represents an attempt by the Legislature to compensate injured employees while protecting certain employers threatened by ruinous com-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 82 Am Jur 2d, Workmen's Compensation § 303.
[2] 81 Am Jur 2d, Workmen's Compensation § 5.
[3] 82 Am Jur 2d, Workmen's Compensation § 660.
[4] 71 Am Jur 2d, State and Local Taxation § 56.
[5] 71 Am Jur 2d, State and Local Taxation § 44.
[6] 81 Am Jur 2d, Workmen's Compensation § 23.

pensation claims. The employer bears the burden of proving that another dust disease is so common and widespread in the industry as to present a threat to the employer's industry comparable to the threat of silicosis, phthisis, or pneumoconiosis to the mining, quarrying, and grinding industries.

2. The requirements of due process leave free scope for the exercise of a wide legislative discretion in determining what expenditures will serve the public interest; whether an expenditure serves a public purpose is a practical question addressed to the Legislature, and it would require a plain case of departure from every public purpose which could reasonably be conceived to justify the intervention of a court. A tax is a means of distributing the burden of the cost of government; the only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes.

3. The defendant has failed to establish that the Silicosis and Dust Disease Fund and its financing scheme are so arbitrary and unreasonable as to be an unconstitutional taking of money. The fund has a valid public purpose, to preserve important segments of the state's industrial base from statutory compensation requirements, and it is administered pursuant to rational distinctions and policy judgments. Therefore, there is no violation of equal protection or due process.

Affirmed.

1. WORKMEN'S COMPENSATION—SILICOSIS AND DUST DISEASE FUND—LEGISLATIVE PURPOSE.

The legislative purpose of the limitations on an employer's liability for workmen's compensation benefits for silicosis or other dust disease and the creation of the Silicosis and Dust Disease Fund is to spread the cost of benefits for some disabilities prevalent in certain industries to all employers in the state; the fund was created to cushion threatened industries, not to limit the liability of all employers if by happenstance an employee should suffer from a dust disease (MCL 417.5; MSA 17.223[1]).

2. WORKMEN'S COMPENSATION—SILICOSIS AND DUST DISEASE FUND—"OTHER DUST DISEASE"—WORDS AND PHRASES.

"Other dust disease" as used in the statute limiting an employer's liability for compensation for certain occupational diseases includes only phthisis, pneumoconiosis, or other dust disease posing a threat to an industry comparable to the threat that silicosis, phthisis, and pneumoconiosis posed to the mining,

quarrying, and grinding industries; the burden of proving that the disease is so common and widespread as to present such a threat remains with the employer (MCL 417.5; MSA 17.223[1]).

3. WORKMEN'S COMPENSATION—SILICOSIS AND DUST DISEASE FUND—TAXATION—PUBLIC PURPOSE.

The Silicosis and Dust Disease Fund and the related tax on employers is for the valid public purpose of preserving important segments of the state's industrial base, with the associated benefits to the state, from the threat of statutory workmen's compensation requirements.

4. STATES—TAXATION—EXPENDITURES—CONSTITUTIONAL LAW—DUE PROCESS.

The requirements of due process leave free scope for the exercise of a wide legislative discretion in determining what expenditures will serve the public interest; whether an expenditure serves a public purpose is a practical question addressed to the Legislature, and it would require a plain case of departure from every public purpose which could reasonably be conceived to justify the intervention of a court.

5. STATES—TAXATION—CONSTITUTIONAL LAW—BENEFITS TO TAXPAYER—PUBLIC PURPOSE.

A tax is a means of distributing the burden of the cost of government; the only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes.

6. WORKMEN'S COMPENSATION—SILICOSIS AND DUST DISEASE FUND—CONSTITUTIONAL LAW—TAXATION—METHOD OF ASSESSMENT.

The Silicosis and Dust Disease Fund and its financing scheme has not been shown to be so arbitrary and unreasonable as to be an unconstitutional taking of money; the fund has a valid public purpose, to preserve important segments of the state's industrial base from statutory workmen's compensation requirements, and is administered pursuant to rational distinctions and policy; therefore, there is no violation of equal protection or due process in assessing all employers based on their proportion of total general disability payments (US Const, Am XIV; Const 1963, art 1, §§ 2, 17; MCL 418.551[2]; MSA 17.237[551] [2]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *A. C. Stoddard,*

*Thomas R. Fredericks,* and *Michael L. Pitts,* Assistants Attorney General, for defendant Silicosis and Dust Disease Fund.

*Hayim I. Gross* and *Lacey & Jones* for defendant Baldwin Rubber Company.

RYAN, J. On October 20, 1967 the workmen's compensation hearing referee found Ronald Stottlemeyer to be "disabled in the field of maintenance work due to moderately severe pulmonary emphysema and fibrosis with chronic bronchitis which were caused by exposure to dust, fumes and other irritants during the period of his employment with his last employer, General Motors Corporation, and with his prior employers." Separate decisions on the same day apportioned the liability for benefits among Mr. Stottlemeyer's prior employers.

After a total of $12,500 in workmen's compensation benefits had been paid to plaintiff, the defendants filed a petition with the Bureau of Workmen's Compensation seeking reimbursement from the Silicosis and Dust Disease Fund for all additional benefits paid out. In support of their petition defendants cited MCLA 417.5; MSA 17.223(1)[1] which reads:

---

[1] MCLA 417.5; MSA 17.223(1) was repealed by 1968 PA 227, eff July 1, which recreated the fund as MCLA 417.51–417.61; MSA 17.230(101)–17.230(111). 1969 PA 317, imd eff August 19, repealed those provisions but created MCLA 418.531; MSA 17.237(531) which reads:

"In all cases in which any carrier shall have paid or cause to be paid, compensation for disability or death from silicosis or other dust disease either to the employee, or to another employer under the provisions of section 435, the carrier shall be reimbursed from the silicosis and dust disease fund for all sums so paid in excess of $12,500.00, excluding payments made pursuant to sections 315, 319 and 345 which have been paid by the carrier as a portion of its liability."

"(b) In all cases in which the employer shall have paid, or cause to have been paid, compensation for disability or death from silicosis or other dust disease, the employer or his insurance carrier (including the state accident fund) as the case may be, shall be reimbursed from the silicosis and dust disease fund for all sums so paid in excess of an aggregate total of $12,500.00 excluding payments for medical and hospital coverage as set forth in part 2, section 4 * * * ."

On November 10, 1972 the hearing referee entered a decision on the petition holding that the employers were not entitled to reimbursement from the Silicosis and Dust Disease Fund for compensation paid to Mr. Stottlemeyer in excess of the sum of $12,500 because his disability was not due to "silicosis or other dust disease" within the meaning of the act since the disease involved was not shown to be such as would pose a general threat to the industry.

The defendant-employers' appeal to the Workmen's Compensation Appeal Board resulted in an affirmance of the hearing referee's decision. On January 3, 1975 the Court of Appeals denied defendant Baldwin Rubber Company's application for leave to appeal. We granted leave to appeal on July 23, 1975. 394 Mich 814 (1975).

I

Appellants first assert that the hearing referee and Workmen's Compensation Appeal Board erred in holding that the employers were not entitled to reimbursement from the Silicosis and Dust Disease Fund for sums paid to plaintiff in excess of $12,-500. The resolution of this question hinges on the meaning given to the words "other dust disease" as used in MCLA 417.5; MSA 17.223(1).

Appellants argue that the statutory term "other

dust disease" must certainly include Mr. Stottlem-
eyer's condition which the hearing referee charac-
terized as "moderately severe pulmonary emphy-
sema and fibrosis with chronic bronchitis which
were caused by exposure to dust, fumes and other
irritants".

Appellee, on the other hand, relies on the defini-
tion of "other dust disease" enunciated in *Felco-
skie v Lakey Foundry Corp*, 382 Mich 438; 170
NW2d 129 (1969). *Felcoskie* involved MCLA 417.4;
MSA 17.223, the forerunner of § 5. Section 4 read:

"Compensation shall not be payable for partial dis-
ability due to silicosis or other dust disease. In the
event of temporary or permanent total disability or
death from silicosis or other dust disease, notwithstand-
ing any other provisions of this act, compensation shall
be payable under this part to employees or to their
dependents in the following manner and amounts:
* * * In no event shall such compensation exceed an
aggregate total of $10,500."

In *Felcoskie* we concluded:

"[T]he legislative history of this act convinces us that
'silicosis or other dust disease' as that phrase has
always been used in section 4 is intended to limit
compensation to silicosis, phthisis, pneumoconiosis, or
other dust disease *posing such a general threat to the
industry.*

"Hence whenever an employer asserts that the limi-
tation of section 4 should be applied to the dust disease
causing the disability for which compensation is sought,
such employer shall bear the burden of proving that
such disease is so common and widespread as to present
a threat to the industry comparable to silicosis, phthi-
sis, or pneumoconiosis." 382 Mich at 446; 170 NW2d
129 (1969).

We will not replicate *Felcoskie's* lengthy discus-

sion of legislative history. In essence we concluded that since the beginning of workmen's compensation plans the Legislature has been concerned with:

"diseases which could swamp an industry—silicosis, phthisis, and pneumoconiosis * * * . The fact that almost everyone in the mining, quarrying and grinding industries is exposed to and probably has incurred (to some extent) these diseases, undoubtedly accounts for section 4's denial of partial disability for them and a ceiling on the amount recoverable for total disability." 382 Mich at 445; 170 NW2d 129 (1969).

The overriding point is that the statute as it evolved over the years represents an attempt by the Legislature to compensate injured employees while protecting certain Michigan employers threatened by ruinous compensation claims.

Thus § 4 denied compensation for partial disability and limited compensation for total disability to $10,500 when the diseases were of a type so common as to pose a threat to the continued vitality of a particular industry.

In 1966 the Legislature replaced § 4 with § 5. Under the new provision employees suffering from silicosis or other dust diseases would receive the same benefits as all other disabled employees. In addition to removing the $10,500 ceiling on benefits the new provision also protected employers by allowing them to seek reimbursement for all benefits paid in excess of $12,500 from the Silicosis and Dust Disease Fund.

Section 5 balances the same concerns as did § 4 —providing benefits to disabled employees and protecting certain employers from an undue financial burden. Rather than achieving the latter at the expense of the former, § 5 provides protection

to the employer by establishing a reimbursement scheme through the Silicosis and Dust Disease Fund.

It is apparent that § 5 has a different impact on employees than did § 4. The question is whether § 5 was meant to have a different impact on employers than did § 4. We hold that the purpose of § 5 is the same as that of § 4 with regard to limiting employer liability, and that the *Felcoskie* construction of "other dust disease" does apply to § 5.

The purpose of the Silicosis and Dust Disease Fund is to spread the cost of benefits for some disabilities prevalent in certain industries to all Michigan employers. If *Felcoskie* were abandoned, any employer could call on the fund resources when an employee suffered from a compensable dust disease, and the purpose of the fund would be thwarted. The fund was created to cushion threatened industries, not to limit the liability of all employers if by happenstance an employee should suffer from a dust disease.

We therefore hold that "other dust disease" as used in MCLA 417.5; MSA 17.223(1) is limited to silicosis, phthisis, pneumoconiosis, or other dust diseases posing a threat to the industry comparable to the "mining, quarrying, and grinding industries". The burden of proving that the disease is so common and widespread as to present such a threat remains with the employer.

II

Appellant next contends that applying the *Felcoskie* interpretation of "other dust diseases" to § 5 cases results in restricting reimbursement from the Silicosis and Dust Disease Fund in such a

fashion as to render the fund's statutory financing scheme an "unconstitutional taking of money". While appellant does not specify whether it is the Michigan or United States Constitution, or which provision of either that is violated, we will briefly discuss the issue with reference to the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution and art 1, §§ 2 and 17 of Michigan's 1963 Constitution.[2]

Appellant is attacking MCLA 418.551(2); MSA 17.237(551)(2).[3] The funding scheme involves assessing all employers based on the amount of general disability payments made by an individual employer as compared to the total amount of all

---

[2] Section 1 of the Fourteenth Amendment to the United States Constitution reads:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article 1, § 2 of Michigan's 1963 Constitution reads:

"No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation."

Article 1, § 17 of Michigan's 1963 Constitution reads:

"No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed."

[3] "As soon as practicable after January 1 each year the director shall assess upon and collect from each carrier a sum equal to that proportion of 175% of the total disbursements made from the silicosis and dust disease fund during the preceding calendar year, less the amount of net assets in excess of $200,000.00 in that fund as of December 31 of the preceding calendar year, which the total compensation benefits, exclusive of payments made pursuant to sections 315, 319 and 345, paid by each carrier in the state bears to the total compensation benefits paid by all carriers in the state." MCLA 418.551(2); MSA 17.237(551)(2).

general disability payments made by all employers in this state during the applicable time period. This percentage is compared to the total expenditures of the Silicosis and Dust Disease Fund during the same period and each employer is liable for its percentage of the fund's requirements.

All employers pay into the fund. Under our holding today[4] only those employers who can show that the compensable dust disease is so common and widespread as to present a threat to the industry comparable to silicosis, phthisis, or pneumoconiosis in certain industries such as mines, quarries, or stoneworking may be reimbursed for benefits paid in excess of $12,500. Appellant concludes: "that to create a special fund which taxes only employers in this state, and to administer this fund in such a manner that it subsidizes certain selected businesses is an unconstitutional taking of property which mandates intervention and reversal by this Court."

First we note that the fund and related tax on employers is for a valid public purpose. The preservation of important segments of Michigan's industrial base with the associated benefits to the state is a legitimate goal. This is especially true when the threat to these employers springs from statutory compensation requirements. As noted in an early unemployment compensation case, *Carmichael v Southern Coal & Coke Co,* 301 US 495, 514–515; 57 S Ct 868; 81 L Ed 1245 (1937):

"the requirements of due process leave free scope for

---

[4] It has always been the position of the Silicosis and Dust Disease Fund that *Felcoskie* applied to § 5. The Court of Appeals has also held *Felcoskie* controlling in § 5 cases. *LaForest v Vincent Steel Processing, Division of Letts Industries,* 59 Mich App 386; 229 NW2d 466 (1975), *Goodman v Bay Castings Division of Gulf & Western Industries,* 49 Mich App 611; 212 NW2d 799 (1973).

the exercise of a wide legislative discretion in determining what expenditures will serve the public interest.

"This Court has long and consistently recognized that the public purposes of a state, for which it may raise funds by taxation, embrace expenditures for its general welfare. * * * The existence of local conditions which, because of their nature and extent, are of concern to the public as a whole, the modes of advancing the public interest by correcting them or avoiding their consequences, are peculiarly within the knowledge of the legislature, and to it, and not to the courts, is committed the duty and responsibility of making choice of the possible methods * * * . As with expenditures for the general welfare of the United States * * * whether the present expenditure serves a public purpose is a practical question addressed to the law-making department, and it would require a plain case of departure from every public purpose which could reasonably be conceived to justify the intervention of a court." (Citations omitted.)

There is no express denial of appellant's right to be reimbursed from the fund. It is true that many employers will not be reimbursed because they will not be able to prove that which is required to obtain reimbursement. Yet this is in theory no different from most benefit plans wherein certain requirements must be met.

Again we have reference to *Carmichael v Southern Coal & Coke Co, supra:*

"Nothing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied.

"A tax is not an assessment of benefits. It is, as we have said, a means of distributing the burden of the cost of government. The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the

devotion of taxes to public purposes. * * * Any other view would preclude the levying of taxes except as they are used to compensate for the burden on those who pay them, and would involve the abandonment of the most fundamental principle of government—that it exists primarily to provide for the common good. A corporation cannot object to the use of the taxes which it pays for the maintenance of schools because it has no children. * * * This Court has repudiated the suggestion, whenever made, that the Constitution requires the benefits derived from the expenditure of public moneys to be apportioned to the burdens of the taxpayer, or that he can resist the payment of the tax because it is not expended for purposes which are peculiarly beneficial to him." 301 US 495, 521–523. (Citations and footnotes omitted.)

Appellant has failed to establish that the Silicosis and Dust Disease Fund and its financing scheme are so arbitrary and unreasonable as to be an unconstitutional taking of money. Because the fund has a valid purpose and is administered pursuant to rational distinctions and policy judgments, we conclude that there is no violation of equal protection or due process.

The order of the Workmen's Compensation Appeal Board is affirmed.

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, and FITZGERALD, JJ., concurred with RYAN, J.

BLAIR. MOODY, JR., J., took no part in the decision of this case.